## JACOB VANDERPOEL v. THOMAS B. SMITH *and others.*

A covenant in a lease provided that, if the building demised should "be destroyed and burned down," and the plaintiff should not rebuild within a reasonable time, the defendants should have the right to terminate the lease. *Held,* that a partial injury of the buildings by fire, so that they could be repaired without rebuilding the structure, was not such a destruction and burning down as was contemplated by the covenant.

APPEAL by the defendants from a judgment of the Marine Court at general term.

The plaintiff leased to defendants for the term of ten years and two months, from March 1, 1859, the premises No. 205 East Twenty-fifth street. The premises were injured by fire. There was a clause in the lease, that in case the building should "be destroyed and burned down," and the plaintiff should not rebuild within a reasonable time, the defendants had the right to terminate the lease. The defendants vacated the premises, contending that there was such a destruction and burning down of the buildings that they had a right to terminate the lease. The action was brought to recover the rent accruing after such vacation of the premises.

*G. R. & T. D. Pelton,* for appellants.

*A. J. Vanderpoel,* for respondent.

BY THE COURT.—DALY, F. J.—The covenant in the lease, was, that if the buildings should be *destroyed and burned down,* and the plaintiff should not, within a reasonable time, *rebuild* the buildings, the defendants should have the right to terminate the lease.

What is expressed by these words, is not merely the injury of the buildings by fire, but such a burning down and destruction of them, as would make it necessary substantially to rebuild them. If the injury were but partial, so that they could be repaired without rebuilding the structure, it was not such a destruction and burning down as was contemplated by this covenant ( *Wall* v. *Hinds,* 4 Gray, 256). This the court below

found to be the fact, and it was justified by the evidence in so finding.

There were two buildings of brick. The one upon the front of the lot was three stories high, and that upon the rear was one story. In the rear, were two large chimneys forty feet high, with a face or front of about twenty-four feet, which chimneys, it would seem, were used for the manufacture of varnish. There were no partitions in the rear buildings, nothing but floors and windows, and it was built up to the front building.

One of the witnesses for the defendants testified that the plaintiff put down the buildings, in his annual stock account, including the chimneys, at $1,800, and another of the plaintiff's witnesses, a sash and blind maker, testified that the buildings could have been built for $1,000, while a builder of forty years' standing, examined on the part of the plaintiff, gave it as his judgment, that the buildings were worth $2,000, and the chimneys $1,000.

A fire broke out in the rear building, in the month of August, 1861. A detail of the injury caused by it was given by the various witnesses, and they did not materially differ in their description. The point in which they were in conflict, was whether the buildings could be repaired without rebuilding. Two builders were examined by the defendants, but they gave no testimony upon this point; but the sash and blind maker, before referred to, testified that he had been accustomed to examine buildings, and that, in his opinion, the proper way to restore the buildings to the condition they were were in before the fire, would have been to have taken down what was left standing, and rebuild from the foundation.

The builder, before referred to, examined on the part of the plaintiff, saw the premises three days after the fire, and offered to put them in the same condition as before the fire, for $400. A year and a half afterward, he repaired them, for which he received $650, but in the meanwhile, he said, the rear part and the gable wall had all fallen down, and 8,000 brick and the iron door had been taken away, the sashes had all been broken, and the casings had been smashed. He did not, he says, put them in the same condition as before the fire, but

nearly as good. His statement of the augmentation of injury after the fire was corroborated by several witnesses. Adams, the deputy superintendent of buildings, saw them nearly a year and a half after the fire, and found them in a much worse condition than at the time of the fire. He noticed that timber had disappeared, and that boys and others had free access, and were pulling and hauling at them, and that there was a hole in the wall, that he was sure the wind had not made. Another witness, Taylor, connected with the superintendent's department, who had examined the buildings after the fire, found upon his next visit, that the rear walls were pretty well down and much injured, and he saw a lot of boys throwing bricks at timbers, trying to get them down, and the superintendent of public buildings thought that the buildings had been more damaged since, than at the fire, by being pulled down.

Mr. Gregor, the superintendent of public buildings, and Adams, his deputy, were at the fire. Adams examined the buildings, in accordance with his duty, and found the rear building damaged about one-quarter, and that the damages to the front buildings were between two and three hundred dollars. The superintendent testified that the front building was injured about one-third, and that the buildings could have been repaired very easily. This is corroborated by Taylor, who says that the front building was injured one-third, and that the rear building required only little repairs; and the surveyor of the Merchants' Insurance Company, who was a builder, examined the premises ten days after the fire to see in what way they were injured, and formed an estimate of the extent of it, which he said was about $400.

This testimony, on the part of the plaintiff, was of a character that entirely warranted the finding of the judge at the trial. It showed, very conclusively, that the buildings could have been repaired after the fire at an expense of about one-fifth of their value, even adopting the low valuation given in evidence by the defendants' witness; that they were not burned down and destroyed within the sense of the words of the covenant, and could have been restored to their former state by a moderate outlay, without the necessity of rebuilding. The judgment should be affirmed.