# EDWARD ELY

*v.*

# DAVID J. ELY *et al.*

1. CONTRACT—*later one supersedes former.* It is a general rule of evidence that a written contract executed between parties supersedes all their prior negotiations and agreements upon the same subject, except when the last contract covers only a part of the subjects embraced in the prior one, and it plainly appears, from the character of the contracts, that the last one was not intended to be in performance or supersedure of the former one, and that the provisions in the former, not mentioned in the latter, were intended to remain unaffected.

2. Where a writing was given by a party agreeing to lease premises and to pay taxes and insurance on the same, and shortly afterwards a formal lease was executed, in which the lessor made no covenants to pay taxes or insurance, but which, with another writing, showed that it related to the same subject, it was *held,* that the last written agreement must govern as expressing the final contract of the parties, and the first was inoperative.

3. SAME—*of lessor to contribute to expense of rebuilding after loss by fire.* Where leased premises were destroyed by fire during the term, the lessee having covenanted to yield possession in the same condition he received the same, and, being about to rebuild, the lessor promised to pay him, as the work progressed, a sum equal to the insurance received thereon, provided the work should be done under the supervision of a particular architect, and the new building should exceed in value the old one by that sum, he will be under no obligation to pay the sum agreed unless the conditions have been complied with in all substantial respects.

4. LANDLORD AND TENANT—*right of tenant to insurance paid landlord.* Where a tenant, by the covenants in his lease, is bound to rebuild in case of loss by fire, and the landlord's wife, as owner of the property, insures the same, and the tenant refuses to pay the premium, and after a loss by fire voluntarily rebuilds, he will not have any contribution by the lessor, or have any claim, legal or equitable, to the insurance money, or any part thereof.

5. INSURANCE—*interests of landlord and tenant each insurable.* Where property of a married woman is leased for a term of years by her husband to another, both the wife and the lessee have an insurable interest in the demised premises.

6. SAME—*rights of mortgagee insuring.* Where a mortgagee insures property, the mortgagor, having no connection with it, can not claim its benefit, but the mortgagee may receive and enjoy the insurance money and still collect the mortgage debt of the mortgagor.

7. Contract—*legal effect of covenant in lease.* The legal effect of a cove nant in a lease by the lessee to keep the demised building in repair at his own expense, and to deliver it up at the end of his term in as good order and condition as when he received it, without any exemption of loss by fire, is, that in case the building is burned, the lessee will rebuild the same, and such loss will not even stop the rent until the building is replaced.

Appeal from the Superior Court of Cook county; the Hon. Samuel M. Moore, Judge, presiding.

Messrs. Williams & Thompson, for the appellant.

Mr. Wm. H. King, for the appellees.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a bill in chancery, filed in the court below by Edward Ely, the appellant, for the purpose of obtaining the benefit of the insurance upon premises of which he was tenant.

By a lease bearing date May 4, 1867, David Ely, one of the appellees, demised to Edward Ely the premises situate in the city of Chicago known as No. 3 Washington street, to hold from the 15th day of July, 1867, until the first day of May, 1878, at the rent of $3000 per year. The lease contained covenants, on the part of the lessee, that he had received the premises in good order and condition, that he would keep them in repair at his own expense, and that, at the end of the term, he would deliver the same up to his lessor in as good order and condition as when they were entered upon by the lessee.

At the same time of the execution and date of the lease, the following agreement was executed by the parties:

"Chicago, *4th May*, 1867.

"It is mutually understood that Edward Ely, the lessee of the property known as No. 3 Washington street, Chicago, has the right to purchase the same, subject to his lease, as follows: Any time within three years from date hereof, at twenty-eight thousand dollars ($28,000), and within five years as above at thirty thousand dollars ($30,000), with interest from date. And upon the following further terms: One-fourth of the purchase money to be paid in cash at the time of giving notice of purchase or desire to purchase, the remainder to be paid in

three equal annual installments from the date of the notice of the desire to purchase, with interest on the full amount of the deferred payments annually, in advance, at eight (8) per cent, all interest to be paid as stipulated, and the deferred payments to be secured to the entire satisfaction of the grantor, his assigns, heirs, executors or administrators, by assignment of proper policies of insurance upon the buildings thereon.

                 "DAVID J. ELY,

                 "EDWARD ELY."

The title to the property was in Mrs. Caroline D. Ely, wife of David J. Ely, and she, in her own name, procured policies of insurance on the building upon the premises. On October 9, 1871, the building was destroyed by fire, and there was paid to her, by certain insurance companies, $5000.

Edward Ely has, since that fire, erected a new building on the lot, better and more expensive than the old one, and claims this insurance money, for the recovery of which the bill was brought.

This claim is based upon an alleged express contract, by which David J. Ely agreed to pay for the insurance upon the building, and also upon the ground that the insurance was, even if there had been no such contract, for the benefit of the party who was bound to rebuild. The express contract relied upon is the following:

"For and in consideration of an agreement to pay $3000 per annum, made this day with Edward Ely, for the rent of No. 3 Washington street, I agree to lease said premises to him from the 15th day of July, 1867, to May 1, 1878; and it is agreed that I am to pay the taxes and insurance on the said buildings and improvements, to leave in the present gas fixtures, and also the furnace and the range; and I also give the option to the lessee to purchase this property at $30,000 any time within five years from this date. In case of said purchase, then the terms are to be $7500 cash in hand, and the remainder in one, two and three years, at eight per cent per annum interest.

                 "DAVID J. ELY.

"If elected to purchase within three years from this date, price to be $28,000, terms as before made.

"D. J. ELY."

This paper writing has no date, and the parties are not agreed in their testimony as to the time when it was given, although Edward Ely admits that it was some time previous to the lease and written purchase option contract of May 4, 1867.

David J. Ely testifies that the writing was procured by Edward Ely the last of February or first of March, 1867, to be used to influence Peter Page, if possible, to lease to Edward Ely, at a lower rent than Page was asking, the building on the corner of Wabash avenue and Washington street, in an adjoining block, of which Edward Ely was trying to negotiate a lease, it being the distinct understanding that it was not to be binding on either of the parties. Edward Ely contradicts this, and they are the only witnesses who speak upon the subject. This paper writing bears the appearance of having been hastily drawn up for a temporary purpose, and not as the final contract upon the subject. It is not signed by Edward Ely, and although it speaks of an agreement as made the same day to pay $3000 rent, there is no other evidence of any such distinct agreement.

The writing, as it purports, is a contract all on the side of David J. Ely, with nothing binding upon Edward Ely. There are absent the usual particular formal covenants which attend the letting of such valuable property for such a length of time and such a large rent.

The lease of May 4, 1867, has no agreement on the part of the lessor, as has the paper writing, to pay taxes and insurance, to leave in the present gas fixtures, furnace and range, and says nothing whatever in regard thereto, the lease containing only terms of simple demise on the part of the lessor. On the part of the lessee it contains a large number of particular, lengthy, formally drawn, and very stringent covenants, as, for the payment of the rent in sums of $750 at the end of every three months; to pay all water rents; to keep the premises in a clean and healthy condition, in accordance with the city ordi-

536        ELY *v.* ELY *et al.*        [Sept. T.

Opinion of the Court.

nances; that the premises are received in good order and condition; that the premises shall be kept in repair by the lessee at his own expense; that he will not underlet or assign without the written assent of the lessor; to yield up the premises at the end of the term in as good condition as when the same were entered upon; for a forfeiture and right of re-entry for default in the payment of rent or keeping any covenants, and various minute provisions in regard thereto and the right of distress; and that the lessee shall pay all costs and attorney's fees and expenses of enforcing the covenants; and there is a provision that changes, alterations and additions in and about the buildings, convenient for the lessee's business, may be made at his sole expense.

There is a variance, too, in the terms of the option to purchase of May 4, 1867, from the paper writing, in this: that in the former the lessee's right of purchase is to be *subject to his lease*, the interest on the deferred payments is to be paid annually in advance, and the deferred payments to be secured, to the satisfaction of the grantor, by assignment of proper policies of insurance upon the buildings. Even if we should reject D. J. Ely's statement of the purpose of giving the undated paper writing, comparing these more full and formal instruments of May 4, 1867, with previous paper writing, the design would seem to be that the two former should take the place and be in the stead of the latter. The very entering into the subsequent instruments of writing, indicates that they were to be constituted and relied upon as the evidence of what was the contract between the parties.

The terms of the undated writing being, "I agree to lease," and not terms of present demise, tend to show it to be executory, looking for its consummation to a lease afterward to be made.

The rule of law upon the subject is familiar—that it is a general rule of evidence, that a written contract executed between parties supersedes all their prior negotiations and agreements upon the same subject.

This rule has not application sometimes when the last con-

tract covers only a part of the subjects embraced in the prior one, and it plainly appears, from the character of the contracts, that the last one was not intended to be in performance or supersedure of the former one, and that the provisions in the former, not embraced in the latter, were intended to remain unaffected. And as neither the lease nor the option contract of May 4, 1867, refer to the subject of insurance, nor to that of gas fixtures, or furnace or range, mentioned in the undated writing, it is urged that this brings that writing within the exception above named: that a subsequent agreement is not to have the effect of superseding an antecedent one, unless the entire ground of the first one is covered by the latter. That would be to nullify the rule in all cases as to any omitted term of a previous negotiation or agreement which should not be contained in a later contract upon the same subject.

This provision as to insurance in the undated writing does not remain in force, simply because there is no mention made of it in the lease of May 4. On comparison of these several writings, the one with the other, no such intention is manifest that this stipulation in the undated writing, relative to insurance, should remain afterward in force, unaffected by the execution of the lease, but the contrary one is evinced, that the lease and option contract of March 4 should be expressive of the entire contract of the parties upon the whole subject.

In confirmation of this, if it were necessary, reference might be made to the letters of Edward Ely to David J. Ely, of 23d July and 22d August, 1867, relative to the construction of the words, "subject to his lease," in the optional contract of purchase of May 4th, 1867, wherein Edward Ely states his understanding, that the purchase was not to be subject to the lease, and, as so showing, he refers to what David J. Ely said to him on the evening of May 4th, 1867, but makes no allusion whatever to the undated writing, which does not contain those words; thus manifesting that he did not regard that writing as then operative and in force, as, otherwise, he would have referred to that as determining the question.

We can entertain no doubt, that the undated paper writing,

if ever of any force, is to be regarded as having been merged in, and superseded by, the subsequent lease and option contract of May 4th, 1867, and that it was thenceforth inoperative and of no force.

As before remarked, the lease contains no agreement, on the part of the lessor, to pay insurance.

On May 31, 1872, Edward Ely addressed a letter to D. J. Ely, informing him that he proposed to build upon the premises, giving a general description of the character of the building he intended to erect; that to do it, he required the insurance money, and requesting D. J. Ely to send on the money at once. Edward Ely immediately commenced rebuilding upon this and the adjoining lot of one Martin Andrews, and completed the buildings in the winter following. The appellant, while admitting that D. J. Ely always denied any liability to pay him the insurance money, testifies that, in August, 1872, D. J. Ely promised to pay over the insurance money as the building progressed, requiring, as the only condition to the payment, the execution of appellant's personal bond against mechanic's liens. D. J. Ely testifies, that while stating to appellant that he did not admit, but denied all claim of appellant to have from him any portion of the insurance money, he did consent to furnish a sum of money equal to the insurance money collected, only upon the condition, that his architect, in Chicago, Wadskier, should be employed to make the plans and specifications, and superintend the erection of the building, that the plans and specifications should meet his approval, the money to be advanced, *pro rata*, as the work proceeded, and that the new building should be superior, to the amount of that sum, to the building he was required to build under the lease. Wadsiker was not employed, by appellant, as the architect, but some other architect was employed. D. J. Ely testifies, that appellant never consulted with him with regard to the character of the building erected, that the architect's plans and specifications were never submitted to him, and that he never approved any plans or specifications. The building erected by appellant was four stories

and a basement, the walls of the basement and first floor being sixteen inches, and above that, twelve inches. It appears, from the evidence, that the walls are too slight for a building of that kind. The testimony of the architect, Wadskier, is, that the walls ought to be twenty inches in the basement, and sixteen inches in the first, second and third stories, and twelve inches in the fourth story, and that nothing less would answer for heavy business.

It appears, too, that there is no front entrance to the building, above the first story, except a centre entrance, for both buildings, which would be unadapted to the separate occupancy of the buildings, to remedy which would involve very extensive alterations of the interior of the buildings.

The promise to furnish any money toward rebuilding, without adverting to whether it was supported by a sufficient consideration, was accompanied with material conditions, according to the testimony of D. J. Ely, which were not complied with, and for that reason there was warrant for the decree, finding there was no liability on the score of such an express promise. It is not sufficient to say that the conditions were substantially complied with, in that the new building is more valuable than the old one, by the amount of the insurance money.

The conditions were important, in many respects, as concerned D. J. Ely, and he is entitled to claim ·exemption from liability otherwise than according to the terms of his promise.

We do not find, then, that the claim of the complainant to this insurance money has the support of a promise to pay the insurance, or of any express promise, to rest upon.

The further position which is taken, that, irrespective of any contract whatever, the insurance was for the benefit of the party who was bound to rebuild, we know no ground of principle upon which it is to be maintained. The erection of the new building, by the lessee, was not done at the instance, or by the procurement, of the lessor. It was the voluntary act of the lessee, done in the performance of his own covenants in the lease. He was not entitled to the contribution, by the lessor, of any money toward the rebuilding. Had there been no

insurance, there could be no pretense of a legal claim against the lessor for any portion of the cost of rebuilding. Whence the claim to this insurance money? It belongs to the assured, the owner of the building. The title to it was purchased with her money, not that of the lessee. She had an insurable interest in the premises, and so had the lessee. Either might have insured his or her own interest. She chose to insure her interest; appellant did not see fit to insure. The owner might have insured for the benefit of appellant, but did not do so. She insured in her own name, paid the premiums, and the insurance was for her benefit. There is nothing looking toward the benefit of appellant in the matter, any more than his having been requested to pay the premiums for insurance, which he absolutely refused to do. He might have done so, and had ground of claim to the insurance money. He did not do so, and is not entitled to the benefit of what he would not pay for. He was not charged, or chargeable, with the premiums. The building, to be sure, upon the expiration of the lease, if it then remains, will belong to the owner of the premises. But that was an advantage she secured by force of the covenants in the lease. Appellant saw fit to enter into covenants to keep the building in repair, at his own expense, and to deliver it up, at the end of his term, in as good order and condition as when he received it, without making any exception of loss by fire.

The legal effect of such covenants is well settled, and appellant must abide by them, as he made them. It is the province of courts to enforce the contracts which parties themselves make, not to make contracts for them.

Because it may seem a hardship for the appellant that he should sustain the whole cost of rebuilding, while the owner of the premises will enjoy the ultimate benefit thereof, should the building remain, a court of equity can not, for such reason, impose upon the owner payment of part of such cost. This insurance money is as much the money of Mrs. Ely, as that derived from any other source.

The case is analogous to that of mortgagor and mortgagee,

who have each an insurable interest. Where the mortgagee insures, the mortgagor, having had no connection with the insurance, can not claim its benefit. The mortgagee may enjoy the insurance money received, and still collect the whole mortgage debt from the mortgagor. *Honore* v. *Lamar Fire Ins. Co.* 51 Ill. 409; *King* v. *The State Mutual Fire Ins. Co.* 7 Cush. 1&.

In *Leeds* v. *Cheetham,* 1 Sim. Ch., it was held that a tenant has no equity to compel his landlord to expend money received from an insurance office, on the demised premises being burned down, in rebuilding the premises, or to restrain the landlord from suing for the rent until the premises are rebuilt.

We do not find that the court below committed any error in dismissing the bill.

*Decree affirmed.*