Joseph F. Daly, J.
concurred in this opinion.
Larremore J., I concur because the opinion of the general term of this court in Sutphen v. Seebass, May, 1883,* is conclusive in this action.

 The opinion in Sutphen v. Seebass was as follows:
Van Hobsen, J.—It is obvious that the marine court, in disposing of this case, understood the law to be that the existence of a bad and unwholesome smell in a flat justified the tenant in abandoning the premises. It is probable that the court believed that it is always for the jury to say whether premises are untenantable or not, and that when a jury shall consider premises unfit for occupancy, the ten-i ant will be absolved, under the act of 1860, from the payment of . rent, from and after the time at which he quits possession.
This may be the correct construction of the statute of 1860, but it is in conflict with the decision of the commission of appeals, in *68 Suydam v. Jackson, 54 N. Y. 450. In that case, the commission held that the injury that would warrant a tenant in abandoning his lease was “ an injury from some sudden and unexpected cause, and not the gradual deterioration and decay produced from the ordinary action of the elements," though decay may in time as completely ruin a building as could fire, tempest, or some great convulsion of nature. A bad smell, the cause of which is not known, but is merely guessed at by a couple of women, is all the injury or destruction that was shown in this case. Is it possible that an efifiuvium is the destruction or injury contemplated by the legislature in enacting the statute of 1860 ? A building is .not destroyed by a bad smell, nor is it injured, though it may be rendered uncomfortable, or even unfit for occupancy. The injury contemplated by the statute is one that partially destroys or breaks down the structure. The charge of the learned justice was, therefore, incorrect, for he assumed that- the act of 1860 applied to a case in which the only complaint of the tenant was that his family was annoyed by unpleasant odors.
There was no exception to the charge, however, so that we could not disturb the judgment, because. the instruction was erroneous. There are other reasons for which a reversal of the judgment must be ordered." The evidence for the defendant shows that certain bad smells came from a wash-basin and from the wash-tubs in the demised premises. What produced those smells, or in what part.of the building they had their origin, was not shown. It appears that officials conected with the health department had been called in and that they examined the premises, but it is a noticeable fact that they were not summoned by the defendant as witnesses. Their testimony, if they had been witnesses, might have thrown some light upon the source from which the foul odors came, but the defendant contented himself with proving that his wife and his daughter thought that the effluvium was sewer gas.
What is meant by sewer gas, is the odor emitted from the pipes by which waste water and refuse are carried to the sewer. Whether the odor comes from a sewer, or from a collection of decaying matter on the interior surface of the pipes, no one who is guided merely by the sense of smell can by any possibility determine. To say, therefore, that the effluvium was sewer gas, is not evidence that it proceeded from premises that the landlord controlled, and unless the landlord can fairly be charged with maintaining or permitting upon premises which he controls, a nuisance that deprives his tenant of the enjoyment of demised premises, there is no ground for charging the landlord with evicting the tenant, and no reason for releasing the latter from the obligation of the lease.
*69 The demised premises were what is called a flat, being a floor in a building let to several families. For the carelessness .of tenants, the landlord is not responsible (Doupe v. Genin, 45 N. Y. 119,124). If the tenant on one floor should so mismanage his plumbing work as to cause pecuniary loss, or even physical discomfort, to another tenant on the floor below, the latter could not say that his landlord had evicted him and his lease was at an end. The landlord is answerable only for his own acts. If he retains in his possession or under his control any part of a building, he must see to it, that no nuisance shall exist in the part so retained, that may injure the tenants, to whom he has let other parts of the house.
This is the fair and sensible rule, and it does not clash with the other fair rule, that the occupant of a tenement is not bound to repair any part of the building that was not let to him for his own use exclusively. It throws upon the landlord the duty of taking care of any part of the building that he controls, and upon each tenant, the duty of so using his own tenement, as not to injure his neighbor. Of course, the rights and duties of the parties may be altered by express agreement.
There is nothing novel in this statement of the law, for it may be found in Wood on the Law of the Landlord and Tenant, § II, where there is a collection of cases which commend themselves to the judgment, and which fully support the views above expressed. - ■
The ease of Trusdell v. Booth, 4 Hun, 100, goes quite as far as it is necessary to go in this case, for there the court said “that vermin or noxious smells in and about the house do not constitute eviction, so as to justify the abandonment of the premises by the tenantand that “wrongful acts of the landlord, which are mere negligence or trespass, do not bar the rent, though the rule is otherwise where the landlord creates a nuisance near the premises, or is guilty of acts which preclude the tenant from the beneficial enjoyment of the premises.” In the case of Vanderbilt v. Persse, 3 E. D. Smith, 428, 430, the court said, “ a bad smell in the pantry, the kitchen being too hot with the stove in it, bad smells from the front window, a stagnant pond of water near the place, bad smell from fish, vermin in the bedrooms, were all matters that might have given trouble to eradicate, but none of them can be held sufficient to relieve the tenant from his liability, or to come within the rule that defines eviction.”
The tenant in the case before us covenanted to do all repairs to walls, windows, plumbing work, pipes and fixtures belonging thereto, whenever damage thereto shall have resulted from his misuse or neglect, and to make good any damage occurring to the building, or to any tenant thereof, by reason of any injury to the *70 dumb-waiters, water-closets, water-pipes or connections upon the demised premises.
If, as the learned, counsel for the defendant imagines (for there is no proof on the subject in the case), the waste-pipes were obstructed, whose duty was it to remove the obstruction 2 It was the duty of the tenant if the obstruction were on his premises, and it was not the duty of the landlord unless the obstruction occurred in the part of the building of which he retained control. How by what right did the learned justice or the jury decide that the obstruction occurred in the landlord’s part of the building ?. There is not an iota of testimony to sustain such an assumption. Hay, more ; what proof is there, that there was any obstruction whatever 2 Why may not the smell have come from an accumulation of filthy desposits on the inside of the pipes 2 Why may not the smell from the wash-tubs have Come from the rotting of the wood of which they were constructed 2 The smells were not perceived till the defendant’s family had been for at least six weeks in the apartments, and there is, therefore, quite as much reason to suspect them, as to suspect the landlord, of having caused the stench.
There was. also testimony introduced as to the difficulty of raising the windows, and as to the collection of water in depressions in the concrete flooring of the cellar after a rain storm. It is not shown that this last was ever brought to the notice of the landlord, but if it had been, it can scarcely be said that such a trifle would constitute a nuisance. A mop or a broom would abate such a nuisance before complaint of it could be put in language. The windows were put in good working order ; but if they had not been, the neglect would not have worked an eviction.
In a word, there is nothing from which the jury were" justified in finding that the bad smells were caused by a nuisance on the premises of the landlord, and the learned ’justice ought to have directed a verdict for the plaintiff.
The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.
J. F. Daly and Vast Brunt, JJ,, concurred.