---

(Cuyahoga Common Pleas, Jan., Term, 1890.)
ALBERT J. GILCHRIST v. WEIL, JOSEPH & COMPANY.

---

*Covenant to surrender in good repair—Sec. 4113, R. S.—*

(1.) A covenant in a lease to deliver up premises in as good condition and repair as the same shall be put in bv the lessor, at the commencement of the term; the natural wear and decay excepted, is a covenant to make such repairs only as would ordinarily arise under their occupation, and does not include extraordinary conditions resulting from injury to or destruction of the premises by fire or the elements, and does not prevent the operation or application of sec. 4113, R. S.

*Section 4113, R. S.—Extent of injury—*

(2.) To justify a lessee abandoning premises or insistng upon termination of a lease under sec. 4113, R. S., the injury must go to the extent of rendering the premises unfit for occupancy; that is, the injury must go so far toward total destruction as to be no longer suitable to be used for commercial purposes, or such as it was fairly and reasonably designed to accomodate in its original construction.

*Rule applied—Injury to part of premises only—*

(3.) If the results of a fire were such as to render a whole building or property leased untenantable and unfit for occupancy, it would make no difference where the fire occurred to take advantage of sec. 4113, R. S., but if the fire was of such extent as to render only a small part of the premises unfit for occupancy and untenantable, and the remainder of the premises were not affected so as to render it impracticable to prosecute the business in the remaining premises, without serious or substantial interruption, it would not terminate the lease as a whole but would leave the lessee liable to pay a proportionate pait of the rent for the premises left in a rentable condition.

*Offer to repair does not defeat statute—*

(4.) If the premises in question were so injured by fire, without the fault or negligence of the lessees, as to render them untenantable and unfit for occupancy, the lessees would have the right to terminate the lease notwithstanding the lessor offered to restore and repair them.

*Temporary inconvenience—*

(5.) Mere temporary inconvenience, a wetting of the walls, and floors, merely putting out a fire in the furnace by flooding the cellar, if it could be removed and effects overcome in a short time, a mere cessation or interruption to business for a day or two would not alone constitute such destruction or such injury as would justify a lessee in terminating a lease under sec. 4113, R. S.

*Question for jury—Burden of proof—*

(6.) Whether premises occupied under a lease containing a covenant to make the repairs resulting from occupation were without fault or negligence of the lessees destroyed or so injured by fire or the elements as to be unfit for occupancy, so as to relieve them from payment of rent, under sec. 4113, R. S., providing that lessees shall not be liable to pay rent under such circumstances, is a question to be determined by the jury and the burden is on the lessees to prove by a preponderance of proof the extent of injurv or destruction.

*Object of viewing premises—*

(7.) The object of a view by the jury of the premises in dispute is for the purpose of affording them a better understanding, appreciation and application of the testimony submitted at the trial, and not for the purpose of gathering facts therefrom upon which to make up their judgment.

*Character and credibilty of testimony—*

(8.) Notwithstanding the defendants had the right to sub-let premises occupied by them under a lease, they would not, by sub-letting, release themselves from the payment of rent under their own lease, and inquiry as to whether they were undertaking or seeking to

lease other premises, get out of and relet the premises occupied by them and into others, before the former were injured by fire, was permissible only to test the credibility and character of the witnesses interrogated.

The judgment of the court in this case was affirmed by the circuit court, 1890, and by the supreme court without report, 33 W. L. B., 223, 52 Ohio St., 677.

Charge to the Jury.

STONE, J.

Gentlemen of the jury: This action is brought by Albert Gilchrist against the partnership and firm of Weil, Joseph & Co., to recover certain installment of rent claimed to be due him for certain premises on St. Clair street, in this city.

It is alleged, in substance, that on January 29, 1885, Albert Gilchrist executed a lease to these defendants of premises known as Nos. 63 and 65 and the two upper floors of No. 67 St. Clair street, in this city, for the term of five years from and after March 1, 1885, and that these defendants, Weil, Joseph & Co., agreed to pay for such premises the sum of $2,500 a year as rent, $300 being for rent for said two upper floors in the building known as No. 67. The rent was payable in four equal installments of $625 each at the expiration of each and every three months, the month of March being first by itself, and then after that, commencing April, 1, 1885, it was payable in four equal installments of $625 each quarter.

It is alleged that the defendants, by said written lease, covenanted to deliver up said premises at the expiration of said term in as good condition and repair as the same shall be put in by the second party at the commencement of said term, the natural wear and decay excepted.

It is allege' that upon the making of this lease, or after it was made, this firm entered into the possession of the premises, and so continued in possession until the happening of this fire.

It is alleged, too, that on July 27, 1887, Albert Gilchrist assigned said lease to this plaintiff, Albert J. Gilchrist.

It is further alleged that about January 1, 1888, Weil, Joseph & Co., vacated the premises and gave to the plaintiff the keys thereof, but that the plaintiff refused to accept the surrender of the premises, or to release the defendants from their covenants or obligations under the lease, but that he then notified the defendants that he would take the keys, rent the premises only for and on their account, and would hold them, as such partners, responsible for any damages done said property, or hold them responsible for any deficiency in the rent

and for breach of any of the other covenants of the defendants, as lessees. He says that afterwards on March 1, 1888, he rented the premises to Stinchcomb, Hendry & Co., for an annual rental of $2,000, which was the highest rent he could then obtain for the premises, and payable at the same time and in the same manner as said defendants had paid. He says that since that time these defendants have not performed the covenants or conditions of the lease originally made with them; but that on the first of April, 1888, they did not pay the rent then due which he says under the lease was $625, and that their tenants, Stinchcomb, Hendry & Co., who had entered into possession under this second lease paid only $166.66, and on July 6, of that year, 1888, these defendants, as partners, disregarded their said covenant to pay rent due as claimed for that quarter—failed and refused to pay said rent—but that they paid through their said tenants, or those to whom the premises were subsequently let, Stinchcomb, Hendry & Co., only $500, wherefore he says there is due to him, this plaintiff, from these defendants, as rent for said premises, the sum of $583.34, with interest on $458.34 from April 1, 1888, and interest on $125 from July 1, 1888, and it is for that amount that a verdict is sought at the hands of this jury.

I do not know whether the jury clearly comprehend just how the compution has been made upon which this statement is made; but, as I understand it, the action is to recover the rent for two quarters, one quarter due on April 1, and another on July1, 1888, and giving credit for different sums this plaintiff realized from Stinchcomb, Hendry & Co., to whom he says he let the premises with the view of getting as much as he could out of them, and applying the money so received upon the lease which he still claimed was in operation as between himself and these defendants. As I recollect it, it is claimed that this second firm, Stinchcomb, Hendry &Co., went into possession about March 1; so that upon April 1, the plaintiff received from them whatever was due him for one month, perhaps $166.66; and he gives credit on the first quarter's installments, which was $625; that is to say, his claim is that there was due him on April 1, from Weil, Joseph & Co., $625, but having gotten out of that quarter $166.66 from Stinchcomb, Hendry & Co., giving them credit for that amount, left a balance due to him of $458.34.

Then when he comes to the next quarter his suit is to recover whatever is still due him after giving credit for the full quarter's payment as made by Stinchcomb, Hendry & Co., which was on the basis of $500 a quarter. After giving them credit for $500 upon the amount

he then claimed to be due, the $625, left a balance of $125; so that you see the action is to recover what is left as due to him upon these two quarters; on the first quarter $458.34 and on the second quarter $125, claiming interest on each quarter from the time it became due. That is the plaintiff's cause of action.

To this petition the defendants have answered admitting, first, that they are partners as is alleged in the petition. They admit that on Janury 29, 1885, one Albert Gilchrist, by written lease, duly demised to them under said firm name, the premises known as. Nos. 63, 65 and the two upper floors of No. 67 St. Clair street, in this city, for the term of five years from and after March 1, 1885; and it is admitted that they, by the terms of the lease, agreed to pay the sum of $2,500 a year rent for the premises, and to pay it as stated in the petition; that is, for the month of March, 1885, they were to pay the amount due for one month, and that thereafter it was payable in quarterly installments of $625, and payable at the expiration of each and every three months during the continuance of the lease.

They admit that they entered into the possession of these premises under this lease, and that they paid rent for the same at the times and in the sums called for in the lease until January 1, 1888.

They admit that about January 1, 1888, they vacated the premises, and gave the keys thereof to the plaintiff, but they deny all the other allegations contained in this petition; that is, they deny all the allegations in the petition that are not expressly admitted. There is, perhaps, therefore, I take it, a denial of the assignment.

Mr. Henderson: "There is no dispute of the fact though."

The court: "There is no dispute now of the fact that it was assigned by the original lessor, Albert Gilchrist, to the present plaintiff, Albert J. Gilchrist."

By way of further and second defense they say that on December 29, 1887, they were in possession of the building and premises in this petition described, and under the lease, as therein set forth; that on or about that date, namely, December 29, said premises and building were, without any fault or negligence on the part of said defendant, destroyed and so injured by the elements and other causes as to be unfit for occupancy, and said defendants thereupon surrendered possession thereof to the lessor. And for that reason they say they are not liable for any further payments of rent, and that by reason of the fire and the result of it, or by reason of the destruction or injury to the premises by the elements, they were released from all further obligation to pay rent, and that at that time they vacated the premises.

The plaintiff, Albert J. Gilchrist, replying to this answer denies what is set up by way of a second defense; that is, denies this defense wherein it is alleged that by reason of the destruction or injury to the building the premises became unfit for occupancy. He denies that any such condition of things as that occurred, or that whatever did occur there was of such character as that it worked out a cancellation of the lease, or the right to surrender these premises and the termination of the lease as to the defendants. Now, that makes up the issue to be determined in the case; and so far as the jury is concerned the principal question for your consideration arises upon this second defense, namely, whether the fire that occurred there should have the effect, or does have the effect, under the facts as they exist, and under the law, whether it gave to these defendants the right to terminate the lease, to vacate the premises and terminate the lease.

This defense is one that is claimed they have the right to make by virtue of sec. 4113, R. S. That statute is as follows: "The lessee of any building which, without any fault or neglect on his part, is destroyed or so injured by the elements or other cause as to be unfit for occupancy, shall not be liable to pay rent to the lessor or owner thereof after such destruction or injury, unless otherwise provided by written agreement or covenant, and the lessee shall thereupon surrender possession of the premises so leased."

Early in the progress of the trial I had occasion to express an opinion as to one legal proposition that was submitted to the court, it being claimed that under the provisions of this lease there was a covenant to repair, even against loss by fire. I then expressed the opinion that the covenant in this lease to deliver up the premises in as good condition and repair as the same shall be put in by the second party at the commencement of said term, the natural wear and decay excepted, was not a covenant to repair as against a loss to the premises, or injury that might result to the premises by fire or some extraordinary injury to the property like destruction by fire or by water, but was only a covenant to make such repairs to the premises as would ordinarily arise under the occupation of such premises—such as might ordinarily arise, but not an extraordinary condition resulting from destruction of the premises by fire or other unexpected and unusual causes; so that all I need to say to the jury now upon that subject is that the lease contains no provision that prevents the operation or application of this section of the statute in this case. Therefore it is a question that will be submitted to the jury as to what extent they were

destroyed or so injured, and whether to that extent that they became unfit for occupancy. This being set up by way of defense the burden rests upon the defendants to establish by a fair preponderance of the testimony this allagation, this defense, namely, that the premises occupied under or so injured by the elements as to be unfit for occupancy.

Now, it is important for the jury, in the view I take of the case, to consider very carefully, all the testimony that has been presented here upon the trial bearing upon that question. You have been upon the premises, and by reason of that visit you are probably better able to appreciate and apply and understand that testimony as it has been submitted here upon the trial. The object of the visit was that you might better understand the testimony, not for the purpose of gathering facts there from which to make up your judgment, but to see the situation, so that you might understand the testimony as it should be given upon the trial.

Now, it becomes important for the jury to determine from the testimony offered here what was the condition of thses premises immediately after the fire that is said to have occurred on or about the night of December 27, 1887. There is no question but that the property or premises leased covered Nos. 63 and 65 St. Clair street, which has been spoken of here as a double store, as I understand it, having four floors, and that it as well comprised two floors, being the upper ones in No. 67, in the building next adjoining Nos. 63 and 65. The testimony has been submitted here for the purpose of aiding you in determining the extent of the injury to the premises at that time. To what extent were they damaged by fire? To what extent were they injured? What was the effect of this fire upon the building, upon the premises occupied by these defendants? To what extent did it render them unsuitable for occupatncy?

It is claimed on the part of the defendants that the fire extended to the burning out of one or more floors; that a large portion of the roof was destroyed, and that in the effort to extinguish the flames a large quantity of water was thrown into the building, flooding, to some extent the premises, rendering it impossible, for the time being, to heat their building, flooding the cellar or the basement so as to put out the fire, and that it affected or perhaps to some extent injured the heating apparatus, and from all that happened, or the result of the whole was to render these premises unfit for occupancy; that they were so destroyed or injured that they were, for that reason, unfit for occupancy.

On the other side it is contended that the extent and effect of this fire were not as

claimed on the part of the defendants, nor was the effect of it to render these premises unfit for occupancy, claiming as to the double store that there was no fire in that part of the premises and that there was no general flooding of the building; that while there may have been some leaking of the water down the wall, and that the water, in some way, found its way into the basement, yet, it did not render the premises, for that reason, unfit for occupancy; that in No. 67, while the effect was to render it necessary to repair the floor in part upon the third floor and perhaps almost wholly on the fourth floor, that still it did not render the premises, as a whole, unfit for occupancy; that only a small portion of the roof had been destroyed, mainly the skylight, and that it was of such small dimensions, the part injured as compared with the whole, that it was in a condition that could be easily remedied, and that it did not constitute such an injury to the property as this statute is intended to meet; in other words, that it did not constitute such injury or such destruction as made, within the language of the statute, these premises unfit for occupancy.

Now, that, gentlemen of the jury, is a question of fact that you are to determine from the testimony submitted here and one that the court cannot aid you about. But there are some propositions of law that may be given as an aid to you in determining that question in the case.

Let me invite your attention again to the words of this statute, a part of this section: "The lessee of any building which, without any fault or neglect on his part, is destroyed or so injured by the elements, or other cause, as to be unfit for occupancy, shall not be liable to pay rent to the lessor after such destruction or injury," etc.

The question, then, is whether in this case there was such a destruction or such an injury to the premises by the fire and water—by what occurred at that time resulting from the fire—as that it became unfit for occupancy; because, to justify a lessee in abandoning premises, or insisting upon the termination of a lease, the injury or destruction must go to the extent of rendering the premises unfit for occupancy. It must amount to such destruction as that the premises are unfit for occupancy; not that there must be an absolute wiping out of the building —its absolute destruction from the face of the earth—but it must be such an injury or the injury must go so far toward total destruction as that it is no longer suitable to be used for commercial purposes, or for such purposes as it was fairly and reasonably designed to accommodate in its original construction. Mere temporary inconvenience occasioned by a fire

would not justify or authorize a tenant to vacate premises, nor would it have the effect to terminate the lease. Mere inconvenience, the mere cessation or interruption to business for a day or two would not have that effect. It must go to the extent of rendering the premises untenantable so that the situation requires a removal elsewhere.

Now, it is hardly within the province of the court to indicate, I think, just what state of facts would justify a removal, or would justify the terminating of a lease. I only propose, in a general way, to give you general rules for your guidance. As I say, mere temporary inconvenience, a mere wetting of the walls by itself, standing alone, as a circumstance, the wetting of the floors, the mere putting out of the fire by flooding a cellar, if it could be removed within a short time—any one of these things alone would not constitute such destruction, or such an injury to the premises as would justify a lessee in terminating a lease. Those are all circumstances to be considered, however, together with other things, with a view of determining whether the building, as a structure, has undergone such injury, and such destruction as a whole that it is no longer a structure suitable for the business for which it was designated. If this fire was of such extent and so destroyed these premises as a whole (and I now refer in what I say to the premises as a whole)—if they were injured to such extent that there was a burning away of the roof or of the windows that is spoken of as to make these premises, as an entirety, unfit for occupancy, unfit to be used in a commercial business, then it was the right of the lessees to vacate the premises and terminate this lease; it was their right to insist upon its being terminated, if such a condition of things occurred. If there was such a destruction or such injury, if it went to the extent that there was such a destruction or such injury, if it went to the extent that the building, as a whole, was untenantable, unfit for occupancy, then they would have the right, we think, under the statute, under this lease to insist upon its termination.

Now what do you find the fact to be upon the subject? What was the extent of the injury? Was it one that made this building, as a whole, untenantable, unfit for use? Did it go to such extent as that the business could no longer be prosecuted in that building, render it wholly impracticable to undertake to carry on the business in this building? Did it assume such proportions as to make it untenantable and unfit for occupancy? If it did not then these lessees are liable upon this lease for the payment of rent, and the fact that they moved out would not change that result; they would still be liable for whatever may be due

Vol 8—44.

[COPYRIGHT, 1901, BY CARL G. JAHN.]

upon the lease unless there had been an assent to, and that I do not understand to be claimed here; but that on the contrary this plaintiff insisted that they were still liable, that the condition of things did not justify a termination of the lease. But if it did go to the extent of rendering the premises unfit for occupancy within the rules I have given you upon that subject then they would not be liable for the payment of rent. Testimony has been offered tending to show that the greater part of the injury resulting from the fire occurred in No. 67, and it is claimed by counsel that even if the injury of 67 was of such a character as to render that portion of the premises unfit for occupancy that it being a separate messuage or tenement in the sense of being a separate building, although embraced in the same lease, that there may be an apportionment here of the rent due; that is to say, that even if the part covered by No. 67 became unfit for occupancy that it did not follow necessarily that therefore the whole premises were unfit for occupancy, and that these lessees still should be held for the payment of rent for premises 63 and 65, provided the premises covered and known by those numbers were not so injured as to be unfit for occupancy. I have already said in substance, and will repeat it again so that you may have it in mind in connection with what I have to say on this subject. What I have alread said relates to the premises as a whole, and no matter where the fire occurred, if it had the effect upon the whole premises to render them untenantable, went to that extent and was so far toward a total destruction of the premises and constituted such an injury for occupancy, then, as I say, there could be no recovery; that is, the defendants would have the right in such a case as that to terminate this lease. But I am disposed to say to you upon this subject as to the premises known as No. 67, that if the fire was of such extent as that it only had the effect to render the premises known as No. 67 unfit for occupancy or untenantable, and other premises did not sustain such an injury as to render those premises, No. 63 and 65, unfit for occupancy, if it did not go to the extent of making it necessary to abandon the whole premises, did not go to the extent of making it impossible to transact that business, as to render it impracticable to prosecute the business in the remaining premises, and they still could carry on the business there without serious or substantial interruption, then, we think, though the premises known as 67 were destroyed so as to be unfit for occupancy, it would not have the effect to terminate the lease as a whole lease, but would still leave the lessees liable to pay a proportionate part of the rent for the premises

so left in a rentable or in a tenantable condition. You will consider the situation as you find it from the proof as to the floors known as No. 67. To what extent were they injured? Was there a destruction there or an injury so as to render that portion of the premises untenantable, without its affecting the other premises so as to render those untenantable? If so, we think this rent may be apportioned, and that in the event you find the other premises still were left in a tenantable condition, and that there is a liability to pay rent for that reason, you should then make such a deduction as you would be justified in making upon the basis of whatever these premises were worth, that is, the premises known as No. 67, were worth as compared with the whole premises. Now, the testimony upon that subject is very meagre, and I do not know but I would be justified in saying that it is confined substantially to what is shown by the lease itself in this provision: "It is understood that if the first party be unable to get the third and fourth stories of No. 67 vacated by March 1, 1885, then the rent herein stipulated to be paid by this second party shall be deducted $25 per month so long as they may be kept out of possession of said third and fourth stories, which time shall not exceed one year from March 1, 1885." That is perhaps the only evidence that would be before you as to what the two floors in No. 67 were regarded as worth as compared with the other premises, and what proportional part of the $2,500 was made up of the rent of these two floors. But there is that circumstance with the view of aiding you in getting at the facts on that question.

Now, I think I have said about all I deem is necessary to the jury in submitting this case to you. Quite a number of requests have been submitted upon both sides, but I believe I have practically covered all that is involved in the requests; that is, the subject has been covered, although I may not have given such propositions as counsel have requested.

There is one point perhaps I ought to mention to the jury that I have not spoken of thus far: If these premises were so injured, or if there was a destruction or injury to them to such an extent as that they were rendered untenantable and unfit for occupancy, the mere fact that the plaintiff offered to restore them and repair them would make no difference; they would still have the right to terminate the lease, if the injury went to the extent that I have indicated, if the destruction or injury went to the extent or rendering the premises unfit for occupancy so that the business could not be carried on there, so that the building was not longer suitable for mercantile purposes. The mere fact that the landlord offered to make repairs and restore them would not have the effect to prevent their acting upon their right to vacate, if such a condition of things existed.

Another thing was suggested upon the trial. Some inquiry was made of one of these defendants as to whether prior to this fire they were not undertaking or seeking to lease other premises, whether they were not making an effort to get out of those premises and into others and trying to relet these premises. I permitted some inquiries along that line, upon that subject, but simply as bearing upon the character and credibility of the witness of whom the inquiry was made.

Under the terms of this lease it was the right of Weil, Joseph & Co., to sublet the premises if they wished, not that the subletting would release them at all from the payment of the rent under their own lease. Unless their landlord accepted a sub-tenant in their place, they would still be liable to pay rent. The question was asked simply as it bore upon the credibility of the witness, and it was for that purpose it was admitted and for that purpose it is to be considered.

There being no controversy but that this lease was made for the period of time it was made, that the rent was for the amount stipulated and that it was paid up to the time of this fire, and that they occupied up to the time of this fire—the question being about the right to go out under the circumstances, that being set up by way of defense—the burden is upon the defendants to satisfy you that such a condition of things happened as that gave them the right to terminate the lease.

And the defendants at the time excepted the said charges as follows:

1. To that portion of the charge with reference to the extent of injury necessary to justify the defendants in abandoning the property and their being relieved from liability, and particularly to that part of the charge as to the injury being such that it was no longer a structure suitable for commercial purposes; that mere temporary inconvenience would not justify abandonment, or a mere interruption of the use for a day or two, or that the situation must be such as to require a removal, or as to the extent of the injury being such as to make impossible or render impracticable the carrying on of the business.

2. To that portion of the charge on the subject of the apportionment of the rent between the portions known as Nos. 63 and 65 and the rooms over No. 67, and particularly as to the charge that if the rooms over No. 67 became unfit for occupancy and the other portion of the premises remained suitable for occupancy that the lease would not thereby be terminated,

but that a proportionate part of the rent might be abated; and further as to the charge relating to the jury taking into consideration, upon the question of the amount of rent allowable upon abatement, the stipulation of the lease relating to the amount that should be allowed in case the defendant should not be able to get possession of the premises over No. 67.

And the said charge and the said special charge as hereinbefore stated, comprise all the charges of the court as given to the jury at said trial.

Whereupon the jury retired for deliberation, and returned a verdict for the plaintiff, as appears of record in the cause; and the defendants thereafter, within three days, filed a motion to set aside the said verdict and for a new trial, and the same was argued by counsel and submitted to the court, which, upon consideration, overruled the same and entered judgment upon said verdict, as also appears of record.

*White, Johnson & McCaslin,* for Plaintiff.
*Henderson & Quail* for Defendant.

*White Johnson* and *McCaslin,* for Defendant in Error, cited: *Linn* v. *Ross,* 10 Ohio, 412; *Cornish* v. *Winton,* 5 Ohio, 477; *Suydam* v. *Jackson,* 54 N. Y., 540; *Hilliard* v. *Coal Company,* 41 Ohio St., 662; *Rolle Abr.,* 236, *Appor., Par.,* 1, 2; *Linn* v. *Ross,* 10 Ohio, 412; *Womack* v. *McQuarry,* 28 Ind., 103, 105; *Whittaker* v. *Hawley,* 25 Kan., 674, 689, 691; *Coleman & Co.* v. *Insurance Co.,* 49 Ohio St., 310; *Graves* v. *Berndan,* 26 N. Y., 498; 2 *Wood Land. & Ten.,* 1089, 1098, note 3; 1 *Tayl. Land. & Ten.,* sec. 386, note 3, 387; *Avery* v. *House,* 1 Circ. Dec., 468; *Suydam* v. *Jackson,* 54 N. Y., 450, 454, 455; *Sutphen* v. *Seebass,* 12 Daly, 139, 141; *Hilliard* v. *Coal Co.,* 41 Ohio St., 662, 669; *Turner* v. *Mantonya,* 27 Ill. App., 500, 502; *Smith* v. *McLean,* 123 Ill., 210, 219; *Wall* v. *Hinds,* Gray 256; *S. C.* 64, *Am. Dec.,* 64; *Vanderpoel* v. *Smith,* 2 Daly, 135; *Spaulding* v. *Munford,* 37 Mo. App., 281, 283; *Lewis* v. *Hughes,* 12 Col., 208, 214, 215; *Cook* v. *Anderson,* 85 Alabama, 99; *Wall* v. *Hind,* 4 Gray 256; *Vanderpoel* v. *Smith,* 2 Daly, 135; *Spaulding* v. *Munford,* 37 Mo. App., 281, 282, 283; *Lewis* v. *Hughes,* 12 Col., 208, 214, 215; *Cook* v. *Anderson,* 85 Ala., 99; *Lockrow* v. *Horgan,* 58 N. Y., 635; *Abby* v. *Phillips,* 35 Miss., 618; s. c., 72 Am. Dec., 143, 147, 148, note; *Davis* v. *Alden* 2 Gray, 309; s. c., 95 *Am. Dec.,* 122; *Wood Land. & Ten.,* 599, sec. 373; *Ely* v. *Ely,* 80 Ill., 532; *Loft* v. *Dennis* 1 El. & El., 454.