James H. Scott, Trustee in Bankruptcy of the Estate of John A. Johnson, Appellant, v. Ray C. Judd et al., Appellees.

Gen. No. 8,052.

Opinion filed September 24, 1929. Rehearing denied February 4, 1930.

PEFFERS & WING, for appellant.

HEMPSTEAD & GREEN, for appellees.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

A bill was filed by appellant as trustee in bankruptcy of the estate of John A. Johnson, against appellees, to recover certain payments alleged to be illegal preferences under the Bankruptcy Act. No question is made

by appellant as to the sufficiency of the pleadings, etc. While the record contains no certificate of evidence, the decree contains a full statement of the facts, and is treated by all parties as sufficient to present the questions sought to be raised.

The decree finds that on March 7, 1925, John A. Johnson was adjudged a bankrupt and that appellant was appointed trustee and qualified as such.

The decree further finds that, for some years prior to said adjudication, Johnson was engaged in the dairy business and was a tenant of appellee Vermilyer; that Johnson owned certain live stock, farm implements, tools, machinery, grain, hay, oats, etc.; that in 1924 Johnson became indebted on certain notes payable to appellee Judd, and to secure the payment thereof, executed two chattel mortgages dated June 25 and October 27, 1924, respectively. Both of said chattel mortgages contained the covenants ordinarily in such instruments, were duly acknowledged and filed for record as provided by statute. The mortgage of June 25 was made to secure the sum of $5,475, and covered certain dairy cattle, certain horses, stock, machinery, growing crops, etc. The chattel mortgage of October 27 was given to secure $2,080, and covered 22 cows.

The court further found that Johnson made the following cash payment to appellee Judd, to apply on said chattel mortgage indebtedness: On December 30, 1924, $100; on February 11, 1925, $30; on February 19, 1925, $70; that, some time prior to February 25, 1925, 17 of the cows covered by said mortgage of June 25 were condemned by the State and Federal governments as tubercular, and that said governments each paid to said bankrupt the sum of $307.24, as indemnity therefor; appellee Judd, upon the receipt of said vouchers, procured Johnson to indorse the same to him to be applied on said indebtedness.

The court further found that on December 10, 1924, Johnson was indebted to appellee Vermilyer in the

sum of $240; that he executed a note for said amount, payable to Vermilyer; that appellee Judd indorsed the same; that thereafter Vermilyer assigned said note to appellee bank; that on January 19, 1925, Johnson paid to said bank the sum of $160 to apply on said note.

The court further found that Johnson, in his dairying business, had been selling milk to appellee Lubner; that on February 9, 1925, Judd obtained from Johnson an order directing Lubner to pay him all balances due for milk delivered; that on March 13, 1925, pursuant to said order, Judd was paid $359.35, being the amount which was due Johnson for milk delivered to Lubner during the month of February, 1925.

The court found that the item of $100 was not recoverable; that the payments of $30 and $70, under said Bankrupt Act constituted illegal preferences, and that appellant was entitled to recover the same; that, while each of the two chattel mortgages held by Judd contained no provision with reference to insurance or any indemnity that might be paid, etc., that said ''proceeds stand in lieu of the seventeen (17) cattle which were destroyed by the State and Federal authorities as aforesaid, and that in law the lien of the chattel mortgages would attach to the indemnity money or proceeds,'' and that no recovery could be had therefor.

The court further found that appellee Judd should not be charged with the payment of the $160 paid to appellee bank; that as to the $359.35 paid by Lubner to Judd, appellant was entitled to recover $59.35 as an illegal preference, being for the amount of milk delivered up to February 9, 1925.

The court dismissed said bill as to appellee bank and as to appellee Lubner, and decreed that appellant as such trustee recover from appellee Judd the aggregate amount of $159.35. To reverse said decree, appellant prosecutes this appeal.

In order to constitute an illegal preference: (1) The transfer must be from an insolvent debtor to a cred-

itor. (2) The effect of the transfer must be to enable such creditor to obtain a greater percentage of his debt than other creditors of the same class. (3) The creditor must have had reasonable cause to believe that it would have such effect. (4) The transfer must have been made within four months of the adjudication. (Federal Bankruptcy Act, sec. 60.)

The court did not err in holding that appellant was not entitled to recover as to the item of $100; paid to Judd on December 20, 1924, and as to the payment to appellee bank of $160 on January 19, 1925, as the decree fails to find that at said times Johnson was insolvent, or, if insolvent, that his insolvency was known to either Judd or the officers of said bank. As to said bank, the finding is that it did not have notice of such insolvency. It might be further observed that the payment to said bank was not a payment on behalf of appellee Judd, but was on an indebtedness owing by Johnson, on which Judd was merely an indorser.

The ruling of the court on the two items of $307.24 presents a more serious question. Said payments were made to Johnson by the State and Federal governments on February 25, 1925. The court found that on February 11, 1925, Johnson was insolvent and that his insolvency was known to appellee Judd. Said payments were within four months of said adjudication in bankruptcy, and unless the court was warranted in holding that the lien of said chattel mortgages attached to said indemnities, the finding and decree of the court thereon cannot be sustained.

A chattel mortgage is a form of lien unknown to the common law, and is a creature of the statute. *Frank v. Miner,* 50 Ill. 444-447; *Kimball Co. v. Polakow,* 268 Ill. 344-348. The statute in reference to chattel mortgages, being in derogation of the common law, must be strictly construed. *Porter v. Dement,* 35 Ill. 478-479; *Hunt v. Bullock,* 23 Ill. 320; *Kimball Co. v. Polakow, supra,* 348.

There being no provision in said chattel mortgages with reference to insurance or indemnity, etc., the question for determination is as to whether the lien of said chattel mortgages can be extended to cover said indemnities.

In *Ely v. Ely*, 80 Ill. 532, the court had before it a bill filed by a tenant to recover insurance received by the landlord for leased buildings, destroyed by fire, and which buildings the tenant rebuilt under a clause requiring that he should do so. The court at page 539 says:

"The further position which is taken, that, irrespective of any contract whatever, the insurance was for the benefit of the party who was bound to rebuild, we know no ground of principle upon which it is to be maintained. The erection of the new building by the lessee was not done at the instance or by the procurement of the lessor. It was the voluntary act of the lessee, done in the performance of his own covenants in the lease. He was not entitled to the contribution by the lessor of any money toward the rebuilding. Had there been no insurance, there could be no pretence of a legal claim against the lessor for any portion of the cost of rebuilding. Whence the claim to this insurance money? It belongs to the assured, the owner of the building. . . .

"The case is analagous to that of mortgagor and mortgagee, who have each an insurable interest. Where the mortgagee insures, the mortgagor, having had no connection with the insurance, cannot claim its benefit. The mortgagee may enjoy the insurance money received, and still collect the whole mortgage debt from the mortgagor. *Honore v. Lamar Fire Ins. Co.*, 51 Ill. 409; *King v. The State Mutual Fire Ins. Co.*, 7 Cush. 10."

In *Clemson v. Trammell*, 34 Ill. App. 414, where a lease was executed with the provision that the buildings to be erected should become the property of the

lessor and where, prior to the expiration of the lease, such buildings were destroyed by fire, it was held that "the money received for insurance was on the insurable interest of the Stonefort Stave and Heading Company (the lessor) and paid out on the debts of that corporation and cannot be held to have been received for the use of the plaintiff (tenant)."

In *Lindley v. Orr,* 83 Ill. App. 70, one W. B. Cauble was in failing circumstances; judgments and executions had been obtained against him and, pending the enforcement of the same, he made an assignment of all his property to appellee Orr for the benefit of his creditors. The court at page 71 says:

"Previous to the assignment, the insolvent had insured the property, taken the policies payable to himself, with no mention or reference therein to any creditors or class of creditors, with the except on that one of the policies contained the clause that the loss should be payable to the building association as its interest might appear, it being a mortgagee. After the assignment all the property covered by the insurance, except a drug store located at the postoffice in the village of Sidell, was destroyed by fire. . . . After paying the mortgage of the building association, $3,341.68 of the proceeds of the insurance policies remained in the hands of the assignee for distribution."

The court, after quoting from *Carter v. Rockett,* 8 Paige Ch. 437; *Columbia Ins. Co. v. Lawrence,* 10 Pet. (U. S.) ,507; 2 May on Insurance (3d Ed.), sec. 456: and 1 May on Insurance (3d Ed.), sec. 6, at page 75 says:

"Neither the assured nor his assignee having agreed or disclosed any purpose or intention to insure the property for the benefit of appellants, they have no better claim to the proceeds of the policies than any other creditors of the insolvent."

*Griffin v. Pfeffer Lumber Co.,* 285 Ill. 19, was a suit instituted to recover certain moneys collected from insurance companies for the loss by fire of certain buildings on premises belonging to appellants and occupied by appellee. Appellants, as the owners of said premises, had leased the same to a partnership doing business as Barney & Hines for a term of ten years. The lease stipulated that the lessees should keep the buildings covered by said lease insured in the name of the lessor, and that "in the event of the loss or destruction of said buildings, . . . whereby loss is payable under said insurance, that then the lessor will repair or replace or erect and construct suitable buildings for said lumber yard . . ., not exceeding the amount received from said insurance," etc. The lease in question was assigned by the lessees, and was finally held by James G. McLean of Olney. McLean organized the McLean Lumber Company, which took over said business. Thereafter, said company was changed to W. L. Pfeffer Lumber Company. Buildings for use in the lumber trade were from time to time erected by said lessees and their assignees. On October 27, 1914, the buildings were destroyed by fire and the premises were surrendered to the lessors. At page 24 the court says:

"Appellee here paid the rent for the time it had possession. It never signed any agreement to pay rent until the term specified in the lease expired or to insure the buildings for the benefit of appellants. It had an insurable interest in the buildings, (*Home Ins. Co. v. Mendenhall,* 164 Ill. 458; *Grand Pacific Hotel Co. v. Michigan Commercial Ins. Co.,* 243 id. 110;) which it was lawful to have insured for its own benefit. Whether that interest was insured for more than it was worth was a matter between it and the insurance company, and the collection of a greater sum than the value of appellee's interest, under the facts here proved, would not authorize a recovery by appellants."

In Ruling Case Law, vol. 14, sec. 536, p. 1367, the author says:

"It is, undoubtedly, the general rule that a mortgagee has no right to the benefit of a policy taken by the mortgagor, unless it is assigned to him. . . . Nor does a policy taken out by a creditor on his debtor's property inure to the benefit of the debtor's mortgagee as to the amount necessary to satisfy the claims of the creditor."

It will be observed that, in passing on the rights of a mortgagee, courts are not inclined to so construe the same as to give the mortgagee any greater right in the property mortgaged, or in the proceeds of insurance thereon, than the language of the instrument shall require.

As stated, neither of said chattel mortgages provided anything with reference to insurance or indemnity. The proceeds here involved were by way of indemnity paid "to the owner" by the State and Federal governments, for property condemned and destroyed. Cahill's St. ch. 8, ¶ 75 (8); Barnes' Fed. Code, 1919-1924, Cum. Supp., p. 845.

We therefore hold, in keeping with the principles laid down in the foregoing authorities, and under the provisions of said State and Federal statutes, that the court erred in denying a right of recovery to appellant for said amounts. Such payments to appellee constituted an illegal preference under the Bankruptcy Act.

In connection with the item of $359.35, the decree finds that appellee Judd took possession of the cows covered by said chattel mortgage on February 9, 1925, and that he thereafter fed said cattle out of his own feed. We think therefore that the court properly held, as to the $300 which accrued from the sale of milk after February 9, 1925, that appellee Judd was equitably entitled thereto; he being a mortgagee in possession and having the care and expense of feeding said mortgaged stock.

For the reasons above set forth, the decree is reversed in part and affirmed in part, and the cause is remanded to the trial court with directions to enter a decree in conformity with our holdings herein.

*Reversed in part and remanded with directions.*