Thomas v. Kingsland.

----

ANDREW J. THOMAS, Appellant, *against* GEORGE L. KINGSLAND, Impleaded with Ambrose C. Kingsland, Respondent.

(Decided January 21st, 1884.)

A covenant in a lease of the upper part of a building, on the part of the lessor, to put and keep the roof of the building in good repair, is to be construed as meaning that the lessor, whenever notified that the roof needs repairs, will cause them to be made; and does not render him liable for losses occurring from a want of repairs of which he was not notified and had no knowledge.

APPEAL from a judgment of this court entered upon the verdict of a jury, and from an order denying a motion for a new trial.

The action was brought to recover damages for injuries to property of plaintiff from water leaking through the roof of the building No. 661 Broadway, in the city of New York, the upper part of which building was occupied by plaintiff under a lease thereof from the defendants, which lease contained a covenant on their part "to put and keep the roof of said building and premises in good repair during the continuance of said lease." The defendant George L. Kingsland alone answered the complaint. At the trial the jury found a verdict in his favor, and a motion by plaintiff for a new trial was denied. Judgment for defendant George L. Kingsland was entered on the verdict; and from the judgment and the order denying the motion for a new trial, plaintiff appealed.

*James Flynn*, for appellant.

*Morris P. Ferris*, for respondent.

VAN HOESEN, J.—It has been held that a covenant to "keep in repair" involves a covenant to put in repair, because unless premises are first put in repair they cannot be kept in repair. A covenant to "put in repair" carries with it an implied admission that the premises are out of repair; but that admission is not indisputable, because it may be shown that the premises did not require reparation. Except, then, for that implied admission, there is no difference between a covenant to "keep in repair" and a covenant to "put and keep in repair."

In the case before us, the evidence shows that the term of the plaintiff began on the first day of May, 1879. In his bill of particulars, the plaintiff complains that on the first day of October, 1879, the roof was out of repair; and there is no evidence that before that day it was in a state of

disrepair. We are to look, therefore, at the condition of affairs at that time, in determining what the rights of the plaintiff and the duties of the defendants with respect to the roof then were. There is proof that on the first of October, 1879, the roof leaked badly, and to the injury of the plaintiff. Were the defendants at fault in not having had the roof repaired before that day, and put in such condition that it could not leak? In other words, did their covenant mean that they would warrant the roof as water-tight at all times, or did it mean that whenever notified that the roof needed repairs they would cause them to be made? The learned judge who presided at the trial held that the defendants were not liable if they repaired the roof with reasonable diligence when they were informed that it was in need of mending. There is authority for the view of the law that the judge gave to the jury. In *Makin* v. *Watkinson* (L. R. 6 Exch. 25), it was held that where the lessor covenanted " to keep the main walls, main timbers and roof in repair," as he (the lessor) could have no knowledge of the state of the main timbers or the roof, without notice of their condition, the lessee could not maintain an action for the breach of the covenant because he had not given to the lessor notice that repairs were required. In a late elementary book, Sutherland on Damages (vol. 3 p. 168), the law is thus stated : " The lessee must give notice to the landlord to make repairs unless the lease shows an intention that the lessor should take notice from his own observation. This intention will not be implied where the lease does not give the landlord the right to enter and view the premises. The rule is that notice to perform is necessary whenever the facts, on the occurrence of which the right to claim performance depends, lie more peculiarly in the knowledge of the party claiming such right."

The tenant is in possession of the premises, and therefore in a better position than the landlord to know the condition of the building. It is well known also that leaks in a roof cannot easily be seen, and that sometimes it is almost impossible to discover them even when it is certain that

Thomas *v.* Kingsland.

they exist. If the landlord were bound to find them and to repair them before they had made their presence known, it would place him in the position of an insurer. But he does not insure; he merely agrees to repair. He does not intend to guaranty that the tenant shall not sustain any injury through a defect in the roof, but he does undertake to restore the roof to a state of repair whenever it is known to be in disrepair. Upon this point, the case of *Leavitt* v. *Fletcher* (10 Allen 119), takes the distinction which I have referred to. There the covenant was " to make all necessary repairs to the outside of the building." The lessor reserved the privilege to enter and view, for the purpose of making improvements. Snow that lay upon the roof caused it to fall, and to injure the plaintiff's carriage. In an action for damages in which compensation for the loss of the carriage was claimed, Judge GRAY said : " The express covenant is only to make all necessary repairs, &c. He does not covenant that the outside shall not fall, but that if it does, he will repair it. He cannot, therefore, be held liable for the damages occasioned by the fall of this building."

Unless the landlord knows that the roof stands in need of repairs, so that notice to him would be useless, it seems reasonable to hold that he ought not to be made liable for losses occurring through a failure to repair unless he has failed to do what was necessary after he had been notified that repairs were required. It would be inconsistent with fair dealing to allow a tenant to recover damages resulting from a want of repair, of which he was aware, but of which he suffered the landlord to remain in ignorance. A man cannot recover damages for an injury that he could either avoid or avert. If neither party knew the premises to be out of repair, the loss must be borne by the person on whom it falls; if that person be the tenant, he cannot charge the loss to his landlord, unless the latter, in addition to his covenant to make the repairs, took upon himself the duty of ascertaining, from time to time, when they were necessary. This is, in substance, what the judge charged the jury, and I see no error in it.

. . The rule of damages given by the judge to the jury is in accordance with the decisions in *Myers* v. *Burns* (35 N. Y. 269), *Cook* v. *Soule* (56 N. Y. 420), and *Hexter* v. *Knox* (63 N. Y. 561).

The judgment and order appealed from should be affirmed with costs.

VAN BRUNT and BEACH, JJ., concurred.

Judgment and order affirmed, with costs.