JOHN J. WHITE, Appellant, *v.* HORACE K. THURBER, Respondent.

*Supreme Court, Second Department, General Term, February* 10, 1890.

1. *Lease.   Covenant.*—An entry by a landlord upon the leased premises to make needful repairs, on requirement and notice of the department of buildings, is not a breach of the covenant for quiet enjoyment, though the tenant refuses to permit the repairs.   And, where due care is taken to avoid interfering with the business of the tenant, the latter cannot recover for injuries to it caused thereby.
2. *Same.*—The refusal of the tenant to permit the repairs to be made does not affect the legal right of the landlord to make repairs rendered necessary by the insecure condition of the premises.
See note at end of case.

Action was brought for damages for an alleged wrongful entry on premises owned by defendant and occupied by plaintiff under lease.   The entry was made in pursuance of a notice served on defendant by the department of buildings of the city of Brooklyn to repair a building.

Appeal from a judgment dismissing the complaint.

*James & Thomas H. Troy (James Troy,* of counsel), for appellant.

*H. Aplington,* for respondent.

PRATT, J.—The covenant of quiet enjoyment was not broken by the landlord's entering upon the premises to make needful repairs.   That covenant is directed to an eviction by title superior to that of the landlord, and is not

violated by an unlawful trespass. But in this case the entry was not unlawful. It was in obedience to a high duty owed to society, viz., to keep the building in repair, that it would not injure people by its fall. The refusal of the tenant to permit the repairs to be made does not affect the legal right. It was proven, without dispute, that the landlord acted upon the requirement and notice of the department of buildings, and the evidence is to the effect that due care was taken to avoid interfering with the business of the tenant. Such injury as was caused to plaintiff's business was rendered necessary by the insecure condition of the premises, and cannot be recovered for by action.

Judgment affirmed, with costs.

All concur.

### NOTE ON COVENANT TO REPAIR IN A LEASE.

Without special covenant, the landlord, at common law, was not bound to repair. The tenant in such case, was required to make ordinary, but not substantial, lasting or general repairs.

Where the tenant covenants to keep the demised premises in good repair, he is liable to repair defects existing at the commencement of the lease; but only to make those necessary for his use of the premises.

Under an agrement to make necessary repairs, the tenant is not obliged to put the premises in good repair, or make any repairs or alterations thereon not necessary for his own use of the premises, but which may be necessary for some future or different use of the property.

At common law, the lessee, in case the demised premises became, during the term, wholly untenantable by destruction thereof by fire, or otherwise, still remained liable for the rent unless exempted from such liability by some express covenant in his lease. The statute of 1860 was enacted to change this rule and cast the misfortune upon the owner of the demised premises, where the tenant had failed to protect himself by covenants in his lease. This act does not provide that the tenant should cease to be liable for rent, in cases the premises, from any cause, shall become so damaged or out of repair as to be untenantable; but only in case of a sudden and total or partial destruction by the elements, acting with unusual power, or by human agency.

Nor is it the design of the statute to relieve a tenant from the performance of his covenants, even though the destruction was occasioned by a sudden cause.

Where the tenant is to repair the demised premises, by a subsequent arrangement at the landlord's expense, he cannot afterward abandon the premises, by reason of defects therein, without making reasonable efforts to repair them, and without further notice or complaint to the landlord.

Where the tenant fails to keep the demised premises in good repair and condition in accordance with his agreement, he is liable to refund to the landlord the expenses of making them after the termination of the lease.

But where the lease contains a covenant, on the part of the lessee, to surrender up the possession of the premises, at the expiration of the lease, in the same condition they are in at the date of the lease, natural wear and tear excepted, and there is no covenant to repair or rebuild, the tenant is not bound to put up new buildings in the places of those, if any, destroyed by fire during the continuance of the term.

But a lessee's covenant in a lease to keep, generally, the buildings in repair binds him to rebuild in case of accidental destruction by fire or otherwise, during the lease; but this is not the case where the covenant is qualified or limited.

The obligation of the landlord in any case to repair, or rebuild the demised premises, rests solely on express covenant or undertaking.

An agreement by a landlord to repair, after it is broken, becomes a chose in action in the tenant's favor, upon which he can maintain an action against the landlord.

The lessor's covenant to repair is to be construed as meaning that he whenever notified that the demised premises need repair, will cause it to be made, and does not render him liable for losses occurring from the want of repairs, of which he was not notified and had no knowledge, unless the lease shows an intention that he should take notice of such want of repair from his own observation. Where neither the landlord nor tenant knew that the premises were out of repair, the loss must be borne by the tenant, unless the former, in addition to his covenant to make the repairs, assumes the duty of ascertaining, from time to time, when they were necessary.

In the case of an apartment house, a tenant, in the absence of an express agreement, is under no obligation to repair the portion of the premises reserved for the common use of all the tenants, but the landlord is bound, without any special contract to that effect, to maintain them in a safe condition.

Where the tenant suffers from the landlord's breach of his contract to repair, he has two remedies; either to do the necessary repairs himself and off-set the costs against the rent; or to show the difference in value between the premises as they were, and as they would have been if properly repaired.

Where the landlord after covenanting to repair, omits to do so, and the tenants elects to make them, he is bound to be reasonable and judicious in such repairs, but is not compelled to use material of precisely the same kind and value; he may adopt the modern style and improvements.

A tenant whose landlord has agreed to put the premises in repair but has failed to do so, has no right, if he knows that his property will be exposed to injury from the elements, or otherwise endangered if left upon the premises, to take the hazard; and if he does, and his property is injured, he cannot recover therefor from his landlord.

There are exceptions to the general rule that the damages, where a lessor fails to perform his covenant to repair, is the difference between the value of the premises as they were and as they would have been, had they been kept in repair. In cases where the requisite repairs are trifling, and the damages by not making them are large, it is the duty of the tenant to make them and charge the landlord with the cost.

Under a covenant to repair by the landlord, the damages for its breach must be those which were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the execution of the contract, as the probable result of its breach, but not for accidental, remote or consequential causes.

The landlord, under such a covenant, is not liable to his tenant in tort for willful refusal or neglect to perform his obligation.

A parol agreement to repair, made by the lessor, after the execution of the lease, unless upon a new consideration, is not binding upon him.

As between landlord and tenant, where there is no fraud or false representation or deceit, and in the absence of an express warranty or covenant to repair, there is no implied warranty or obligation on the part of the landlord that the premises are in a safe condition for use, or that they will not become unsafe during the term. Where he lets premises and agrees to keep them in repair, and fails to do so, in consequence of which a party lawfully upon the premises suffers injury, he is responsible for his own negligence; but he is not liable, where the tenant has agreed to make the repairs prior to the accident and has been allowed therefor by a deduction from the rent.

The lessor of premises, demised in a ruinous state, cannot shield himself from liability to strangers for damages resulting from their defective condition, by taking from the lessee a covenant to keep the premises in good order and repair.

*Where the lease contains no covenant to repair.*—In Moffatt *v.* Smith, 4 N. Y. 126, it was held that, where there was no agreement on the part of the lessor to repair, the lessee cannot, when sued for the stipulated rent, set up the want of repairs either as a defense or in reduction of the claim.

The tenant, and not the landlord, was held, in Kastor *v.* Newhouse, 4 E. D. Smith, 20, responsible for the damages, where an adjoining

property is injured, in consequence of a defect arising from want of proper repairs to the demised premises.

In Coddington v. Dunham, 3 J. & S. 412; 45 How. 40, it was held that a lessor was not bound to repair the water pipes, outside the demised premises, so as to keep up the supply of Croton water; and that his neglect to do so was no defense to an action for the rent, nor was it a valid counterclaim for damages.

A landlord is not impliedly bound to keep a demised dwelling-house in the same repair as when leased to a tenant or to improve the same, and a direct covenant so to do is necessary to make him liable in damages. Hays v. Moody, N. Y. City Ct., 1888.

The landlord is not liable for repairs done by the tenant upon the demised premises, unless on his special agreement to pay for them. Mumford v. Brown, 6 Cow. 475; Moffatt v. Smith, 4 N. Y. 126; McCarty v. Ely, 4 E. D. Smith, 375.

Nor is he, in any case, bound to repair, unless by force of an express covenant or contract. Howard v. Doolittle, 3 Duer, 464; Corey v. Mann, 6 Id. 679; 14 How. 163; White v. Mealio, 5 J. & S. 72.

A landlord, in the absence of a special agreement, is under no obligation to do any act to protect the tenant from the consequences of the lawful acts of an adjoining owner, in excavating to such a depth as to endanger the stability of the demised premises; nor does the act of 1855 vary his duties and liabilities in this respect. Sherwood v. Seaman, 2 Bosw. 127; White v. Mealio, ante.

Where the landlord has covenanted to keep the premises in tenantable repair, it is the duty of the tenant to notify him of the want of repairs. Wolcott v. Sullivan, 6 Paige, 117.

Where the premises are occupied, not by the owner but by third persons, it is upon the latter as tenants, and not upon the owner as landlord, that the duty of keeping them in good condition and repair presumptively devolves, where there is no special agreement by which the relative duties of the parties are altered. Corey v. Mann, 14 How. 163; Howard v. Doolittle 3 Duer, 464.

At common law, the landlord, without special, covenant was not bound to repair. The tenant was bound to treat the premises, so that no injury was done; not to make substantial, lasting or general, but only ordinary, repairs. White v. Albany Railway, 17 Hun, 98; Suydam v. Jackson, 54 N. Y. 450. This obligation does not extend to making the premises better than they were when the lease began.

The case of White v. Albany Railway, ante, differs from the case of Green v. Eden, 2 N. Y. S. C. 582. In the latter case, the tenant covenanted " as a further rent to keep the premises in good repair and condition." The words " good repair " were held to make him liable to repair defects existing at the commencement of the lease. In the case of Lockrow v. Horgan, 58 N. Y. 635, the lessee agreed to make necessary repairs, and to keep the

premises tenantable at his own costs. The defect which this agreement was held to cover was the settling of a wall owing to defective construction, a matter which took place after the commencement of the lease. Neither of these cases, therefore, shows that an agreement to do necessary repairs requires the lessee to make the premises better than they were.

In the case of Myers v. Burns, 35 N. Y. 269, the landlord covenanted to keep the hotel and premises in good, necessary repair, at his own expense. He was held liable to do what was necessary, although the defect had existed at the beginning of the lease. The repairs, however, for which he was thus liable, were those necessary to the tenant's use of the premises.

The ordinary rule, of course, is that the tenant takes the property just as it is, and pays his rent for the use of it in that condition. White v. Albany Railway, ante. All that he is to do is to restore it as he took it. And this is so reasonable that it would be the probable meaning of any agreement of lease which did not expressly state otherwise. Id.

In this case, the defendant was in possession of certain premises as tenant of the plaintiff's testator. The premises were then out of repair. Subsequently the plaintiff's testator leased the premises to the defendant for two years more. The instrument executed by defendant provided that the lease was at a certain annual rent and necessary repairs, with all alterations if needed. The part executed by the lessor stated the yearly rent and that all repairs and alterations necessary were to be made by the tenant as part of the consideration for the lease. And it was held that the tenant was not obliged to put the premises in good repair, or make any repairs or alterations thereon not necessary for its use of the premises.

In the present case, the word " necessary " applied to repairs, was understood to denote such repairs as were necessary to the tenant, and not such as might be necessary for some future or different use of the property, after the lease had expired.

At common law, not only was the lessor, without express covenant to that effect, under no obligation to repair, but, if the demised premises became, during the term, wholly untenantable by destruction thereof by fire, flood, tempest or otherwise, the lessee still remained liable for the rent unless exempted from such liability by some express covenant in his lease. Suydam v. Jackson, ante; Hallett v. Wylie, 3 John. 44; Graves v. Berdan, 26 N. Y. 498; 3 Kent's Com. 465. But the lessee was under an implied covenant, from his relation to his landlord to make what are called tenantable repairs. He is bound, therefore, to keep the soil in a proper state of cultivation, to preserve the timber and to support and repair the buildings. These duties fall upon him without any express covenant on his part, and a breach of them will, in general, render him liable to be punished for waste. Id.

But he was not bound to make substantial, lasting or general repairs, but only such ordinary repairs as were necessary to prevent waste and

decay of the premises. If a window in a dwelling should blow in, the tenant cannot permit it to remain out and the storms to beat in and greatly injure the premises without liability for permissive waste; and if a shingle or board on the roof should blow off or become out of repair, the tenant cannot permit the water, in time of rain, to flood the premises, and thus injure them, without a similar liability. A slight effort and expense on his part could save a great loss; and, hence, the law justly casts the burden upon him. The Statute of 1860 was not passed to shift this burden from the lessee to the lessor. Id.

But it was considered a hard rule that the tenant who had, from ignorance or inadvertence, failed to protect himself by covenants in his lease, should be obliged to pay rent in cases where, from fire, flood or other fortuitous causes, the premises were destroyed or so injured as to be untenantable; and it was to change this rule and cast the misfortune upon the owner of the demised premises that the law of 1860 was enacted. This statute provides for two alternatives, viz.: when the premises are "destroyed" or "injured." The first alternative has reference to a sudden and total destruction by the elements, acting with unusual power, or by human agency. The latter has reference to a case of injury to the premises, short of a total destruction, occasioned in the same manner. If the legislature had intended to provide that the tenant should cease to be liable for rent when the premises from any cause became so damaged or out of repair as to be untenantable, it would have been easy to have expressed the intent in apt and proper language. The terms "destroyed" and "injured" do not convey the idea of gradual deterioration from the ordinary action of the elements in producing decay, common to all human structures.

*Covenant by lessee.*—In Hull v. Burns, 17 Abb. N. C. 317, the landlord sued his tenant for the amount expended by him for plumbing work upon a dwelling house leased by the former to the latter. The lease contained a covenant on the part of the lessee to make all repairs to the plumbing work, etc., at his own expense during the term, and to fulfill all the ordinances of the city, and all orders or requirements imposed by the board of health, connected with the premises. Upon the complaint of a former tenant of the premises, the board of health had ordered the plumbing work in question to be done by the owner. The order was outstanding when the tenant leased the house, but he had no knowledge thereof. After his term began, he complained to the board of health of the existence of sewer gas, etc., and the landlord was thereupon compelled to execute the orders of the board ; and for the cost of the work done he brought this action upon the covenant in the lease. The trial court, upon the motion for a new trial upon the judges' minutes, held that the covenant in question should be construed to require the lessee to comply with the orders of the board of health in regard to defects in the premises arising during the term, and even those existing at the time, unless they could not be ascertained by due diligence, and were known to the lessor and undisclosed by

him to the lessee; and that the concealment of the existence of the outstanding order of the board of health, when the lease was made, was a wrongful act amounting to a fraud. But on appeal the general term of the N. Y. City court held that the lessee was bound to repay to the lessor the amount expended by him for plumbing work upon the premises, during the term, though an order of the board of health for the repairs to be made by the plaintiff was outstanding when the lease was made, and the lessee had then no knowledge thereof.

In Thomas *v.* Nelson, 69 N. Y. 118, an action was brought to recover rent for the occupancy of certain premises under an alleged lease. There was a defective flue which made the occupancy extremely uncomfortable and inconvenient. The tenant continued to occupy complaining of the flue, until an arrangement was made by which he was to repair the flue at the landlord's expense. And it was held that, after this arrangement, the tenant could not abandon the premises on account of the flue without making reasonable efforts to repair it. His promise was not without consideration, as the landlord agreed to pay him for the labor and expense in doing the work. He could not, on account of the defective condition of the flue and without any further notice or complaint to the lessor, abandon the premises; and he was estopped from complaining of the flue for the reason that it was left out of repair by his own neglect to perform his contract to repair it.

In Truesdell *v.* Booth, 4 Hun, 100, the tenant hired a dwelling house and entered into occupation. He, in addition to the yearly rent, also covenanted to make necessary repairs, which had the effect of reducing the rent slightly, as compared with the rent paid by a prior tenant. There was no covenant to repair on the part of the landlord. The tenant paid rent up to a certain time, gave notice to the landlord that he would not be bound, and abandoned the premises for the reason that they were not tenantable. The walls of the house were usually damp, and the tenant's family became and remained sick for some time by reason of such dampness. It was held that the wrongful acts of the landlord, which amount to mere negligence or trespass, do not bar the rent. The rule is otherwise where the landlord creates a nuisance near the premises, or is guilty of acts which preclude the tenant from the beneficial enjoyment of them, in case the tenant shall abandon the premises by reason thereof. The statute, chap. 345, Laws of 1860, is not available as a defense in such an action.

In McMann *v.* Autenreith, 17 Hun, 163, an action was brought to recover rent falling due upon a lease of certain premises. The tenant agreed to do all the repairs which may be required in and upon said premises at his own cost and expense. The building was an old one when rented, and the tenant fitted it up in some respects for the purposes of his occupancy. Soon after he entered into possession, he placed goods of great weight within the building, and, by reason of this weight, and of the condition of the building itself, the floor settled. In the spring following, the roof and

floors settled still more in consequence of a snowstorm. Upon the tenant's request, the plaintiff employed a carpenter and made the roof secure. In order to do this, it was necessary to remove a strip of flooring which the tenant requested the landlord to leave open, until he had disposed of his goods stored there. After six months or so, the tenant asked the landlord to lay down this strip of flooring, and the latter refused to do so. The tenant thereupon abandoned the premises. And it was held that the clause in the lease requiring the tenant to surrender in as good condition as reasonable use would permit, damages by the elements excepted, did not relieve him of the obligation to do the repairs in question; and that the covenant in the lease to repair covered this repair to the roof and building, and the case did not fall within the provision of chap. 345, Laws of 1860. It was not the design of that law to relieve a tenant from the performance of his covenants, even though the destruction was occasioned by a sudden cause.

In Hartford & New York Steamboat Co. v. The Mayor, etc., of N. Y., 78 N. Y. 1, the defendant executed a lease or agreement to the plaintiff transferring the right to collect the wharfage of one of its piers, which defendant was required by law to maintain for the public use. Plaintiff took the lease upon the representation that substantial repairs would be made by defendant, and that plaintiff would not be required to make any save ordinary and usual repairs. When the lease was made, the pier was old and substantially destroyed by natural wear and decay, and defects hidden under the surface of the water. The defendant neglected to make such substantial repairs, and in consequence thereof the pier fell, leaving nothing to repair and requiring the erection of an entirely new pier. This defendant refused to build, and plaintiff was compelled to rebuild. Plaintiff brought an action to recover the costs of rebuilding and the damages. The lease provided that plaintiff should keep the pier in good condition and safe and proper repair, and that all alterations, improvements and repairs of whatsoever nature or kind should be made at its expense, and that the pier should revert to defendant at the expiration of the lease. And it was held that the plaintiff assumed the burden of all repairs of every description which the pier might need ; that, as between the parties, the city was relieved of all obligation to repair or maintain it, and that the only possible effect of the exception of natural wear and decay, was to qualify or restrict the liability of the plaintiff to the city, to restore the wharf in good condition. Though it was the duty of the city to the public to make such repairs and thus maintain the pier, yet the plaintiff had covenanted with the city to keep the pier in good condition and safe and proper repair ; and though this covenant might not affect the liability of the city to the public, it is an answer to a claim by the plaintiff against the city for a loss arising from the want of such repairs.

In Green v. Eden, 2 N. Y. S. C. 582, the lessee covenanted to keep the leased building in good repair and condition. At the time he took posses-

sion the roof and steps were in bad condition. The lessee made such repairs as were needed for his own comfort, and the steps became rotten, and the roof leaked so as to injure the walls and building. The landlord, after the termination of the lease, partially shingled the roof, replaced the gutter, made new steps to the house, and brought an action against the tenant to recover the amount of such expenses. And it was held that these repairs were within the covenant of the lease and that the lessee was liable for the expense of making them. The covenant to keep the house in good repair and condition was not performed by leaving a leaky roof to the house, so that the rain penetrated the building and injured it and its contents ; nor by leaving a rotten gutter which would not do its work ; nor by leaving steps so rotten as not to be safe to use.

In Warner *v.* Hitchings, 5 Barb. 666, it was held that, where a lease contains a covenant, on the part of the lessees, to surrender up the possession of the premises, at the expiration of the lease, in the same condition they are in at the date of the lease, natural wear and tear excepted, but there is no covenant to repair or rebuild, and the buildings are destroyed by fire during the continuance of the term, the tenants are not bound to put up new buildings in the place of those destroyed. The liability that the tenants were to rebuild the erections in case of their destruction by fire, is an extraordinary one for the lessees to assume, and when it is intended, it is usually expressed in terms not susceptible of misconstruction. The omission of a covenant to repair from the lease is a strong reason for supposing that neither party intended, by other provisions, to assume or impose the obligations which it creates. This covenant has always been regarded as imposing a more extended liability than the covenant to surrender the premises in as good condition as found. And the insertion of the latter covenant has never been considered as superseding the necessity of the former, when the intention is to charge the tenant with repairs ; even those not made necessary by casualty.

It is only by implication that a contract to surrender the premises in the same condition can be held to bind the lessee to rebuild ; thus enlarging instead of restraining the signification of the words of the agreement.

The lessees' covenant in a lease, "to keep the buildings and fences in good repair, except natural wear and tear," binds them to rebuild in case of accidental destruction by fire or otherwise. McIntosh *v.* Lown, 49 Barb. 550.

Where the covenant by the lessee is to repair and leave the premises in the same state as he found or received them, or language to that effect, he is merely required to use his best endeavors to keep them in the same tenantable repair, and is not bound, by such a covenant, to restore buildings destroyed by fire or otherwise, during the term, without his fault. This is in consequence of a construction given to the covenant, that the lessee is so to repair or keep in repair the buildings, etc., as to leave the demised premises in the same state as he received them. But where the covenant

is to repair or keep in repair, generally, the buildings, etc., without the qualifying words mentioned, all the authorities hold that it requires the tenant to rebuild, etc., in case of the accidental destruction of the buildings.

In Lockrow v. Horgan, *ante*, an action was brought to recover rent and for repairs, also for improvements put upon the demised premises by the tenant and removed by him. The lease contained a covenant, on the part of the tenant, to make such improvements as he might require, also to make all necessary repairs and to keep the premises in tenantable order at his own cost, and to leave all the improvements upon the premises at the expiration of the lease. The premises became untenantable because of the settling of the rear wall of the building, owing to the original defective construction of the foundation, and the tenant abandoned them. He claimed that his covenant to repair did not cover such a defect, and that he was exonerated from the payment of rent by reason of the premises becoming untenantable. And it was held that the covenant was absolute to make all necessary repairs and keep the premises in tenantable order, and, in the absence of fraud on the part of the landlord, the tenant was bound to make the repairs irrespective of the cause of the defect ; and that in case the tenant abandons the premises without making the repairs, the landlord has a right to make them and recover the expenses. See Ward *v.* Kelsey, 38 N. Y. 80.

In Vanderpoel v. Smith, 2 Daly, 135, the lease provided that, if the building should be destroyed and burned down, and the lessor should not rebuild within a reasonable time, the tenant should have the right to terminate the lease. And it was held that a partial injury by fire, which could be repaired, without rebuilding, was not within the covenant.

So, in Warner v. Hitchings, *ante*, it was held that the tenant, under a covenant to surrender up the premises, at the expiration of the term, in the same condition, natural wear and tear excepted, was not bound to rebuild, in case of destruction by accidental fire ; that he can only be made responsible, in such case, on an express covenant to repair or rebuild.

*Landlord's covenant.*—In Witty v. Matthews, 52 N. Y. 512, it was held that the obligation of the landlord in any case to repair, or rebuild demised premises, rests solely on express covenant or undertaking. Without an express covenant to that effect by the lessor he is neither bound to repair the demised premises himself, nor to pay for repairs made by the tenant. See Mumford v. Brown, 6 Cow. 475.

In the former case, an action was brought for breach of covenant of quiet enjoyment in a lease. The lease contained the following condition : " And it is further agreed between the parties to these presents that in case the premises hereby leased shall be partially damaged by fire, but not rendered wholly untenantable, the same shall be repaired with all proper speed, at the expense of the said party of the first part," (the landlord). During the term a fire occurred which damaged the premises and rendered them wholly untenantable. And it was held that by the terms of the demise,

the lessor has undertaken to repair, in case the premises should be partially damaged by fire, but not rendered wholly untenantable, with all proper speed at his own expense ; and that the duty of repair, under such circumstances, was upon the defendant, and that, if he should fail to repair within a reasonable time, the tenant might repair and hold the landlord for the necessary expense.    See Myers *v*. Burns, 33 Barb. 401.    There was no covenant by the landlord to repair under any other circumstances, and this covenant cannot be imported into any other clause of the lease, or a liability implied to repair any damage or injury to the premises other than such as shall be occasioned by fire, and shall leave the premises tenantable in whole or in a part.    As a covenant to repair is not applied by law, an express covenant will not be enlarged by construction.    Such implication is forbidden when the landlord has expressly covenanted to repair under other circumstances and less extensive damages.    The law assumes in such case that the parties have made express provision for every case in which the landlord should be held to repair.    Witty *v*. Matthews, *ante ;* Kent *v*. Welch, 7 John. 258 ; Frost *v*. Raymond, 2 Caines, 192 ; Vanderkarr *v*. Vanderkarr, 11 John. 122.    When parties have entered into written engagements, with express stipulations, they ought not to be extended by implication, for the presumption is, that having expressed some, they have expressed all the conditions by which they intend to be bound under that instrument.    The parties will be held, rather in the absence of any evidence of fraud or mistake, to have included the whole contract in the terms of the written agreement.

In Mirick *v*. Bashford, 38 Barb. 191, the owner of a warehouse leased it to a tenant with a contract to repair it, and then conveyed the property to the plaintiff.    The contract to convey was made, while the tenant was in possession under a verbal lease from the owner which would expire in a short time thereafter ; and, by the lease, the repairs were to be made immediately, so that the tenant could enjoy the benefit of them during the remainder of the term.    After making the contract to convey, the owner refused to make the repairs in consequence of his agreement to convey, and conveyed the premises to the plaintiff.    And it was held that, after an agreement by a landlord to repair is broken, it becomes a chose in action in the tenant's favor, upon which he can maintain an action against the landlord.

But, if the grantee in fee of the landlord refuses to recognize any liability to repair, and the tenant, with notice of such refusal, attorns to him and pays him rent, the grantee is not liable on the landlord's contract to repair, if such contract was broken, and the landlord's liability for the breach was complete, before the grantee had acquired any legal estate in the premises.

And if, after a purchaser from the landlord has repudiated the landlord's covenant to repair, and refused to perform it, the tenant, avowing his intention to hold the lessor upon his covenant, continues in possession of the premises, attorning to the purchaser by the payment of rent, without ob-

jection, as it becomes due, this will be held to be evidence, *prima facie* at least, of a waiver by the tenant of any claim against the purchaser, on the landlord's covenant to repair.

*Extent of covenant.*—It was held in Thomas *v.* Kingsland, 12 Daly, 315, that a covenant to "keep in repair" involves a covenant to put in repair, because, until premises are first put in repair, they cannot be kept in repair. A covenant to "put in repair" carries with it an implied admission that the premises are out of repair; but such admission is not conclusive, for it may be shown that the premises do not require reparation. Except for such implied admission, there is no difference between a covenant to "keep in repair," and a covenant to "put and keep in repair." Id.

A covenant to repair, on the part of the lessor, was held, in Ward *v.* Kelsey, 38 N. Y. 80, to require him not only to keep the premises in good repair, but to put them in that condition. See Myers *v.* Burns, 35 N. Y. 269.

There is no implied covenant on the part of a landlord that a building shall continue fit for the purpose for which it was demised, even where it is let for a special purpose, and though its use or occupation for any other is, in terms, prohibited. Howard *v.* Doolittle, *ante.*

If a landlord covenant to repair, the fact that the premises are out of repair is not a defense to an action for rent ; in such case the tenant can only recoup his damages. Harger *v.* Edmonds, 4 Barb. 256.

In Speckles *v.* Sax, 1 E. D. Smith, 253, the lessor's failure to repair, where he is bound to do so by his contract, was held not to amount to an eviction, but only to a breach of covenant.

A landlord who leases part of a building to a tenant, under a covenant that the latter should keep the plumbing in the demised portion of the building in repair, but who himself omits properly to repair and preserve the plumbing in the rest of the building, so that the demised premises become by reason thereof untenantable and unfit for occupancy, which compels the tenant to leave the building, cannot recover for rent subsequently accruing. St. Michael's Prot. E. Ch. *v.* Behrens, 10 N. Y. C. P. 181.

In Heintze *v.* Erlacher, 1 Rob. C. C. 465, a covenant on the part of the tenant to repair was held to extend to all repairs, irrespective of the cause of the defect.

A lease of a dwelling house in the city of New York was made, wherein the lessee covenanted during the term, at his own cost and expense, to make and to do all repairs required to the plumbing work and pipes, range and fixtures, belonging thereto, and to keep the Croton pipes, and the connections with the Croton main, free from ice and other obstructions at his own expense, and to keep the sewer connections free from obstructions to the satisfaction of the municipal and police authorities, and not to call upon the lessor for any disbursements or outlay during the term, and to promptly execute and fulfill all the city ordinances applicable to said prem-

ises, and all orders and requirements imposed by the board of health and
police department, in, upon, or connected with the premises, during the
term, at his own expense. And it was held that, under such covenant, the
lessee was bound to repay to the lessor the amount expended by the latter
for plumbing work done upon the premises during the term of the lease.
Hull v. Burns, 17 Abb. N. C. 317.

*Notice.*—A covenant in a lease of the upper part of a building, on the
part of the lessor, to put and keep the roof of the building in good repair,
is to be construed as meaning that the lessor, whenever notified that the
roof needs repairs, will cause them to be made, and does not render him
liable for losses occurring from the want of repairs of which he was not
notified and had no knowledge. Thomas v. Kingsland, *ante*.

In Macon v. Wilkinson, L. R. 6 Exch. 25, it was held that where the
lessor covenanted to keep the main walls, main timbers and roof in repair,
as the lessor could have no knowledge of the state of the main timbers or
the roof, without notice of their condition, the lessee could not maintain
an action for the breach of the covenant, where he had not given to the
lessor notice that repairs were required.

So, Sutherland on damages states that the lessee must give notice to the
landlord to make repairs, unless the lease shows an intention that the
lessor should take notice from his own observation. This intention will
not be implied, where the lease does not give the landlord the right to
enter and view the premises. The general rule is that notice to perform
is necessary, whenever the facts, on the occurrence of which the right to
claim performance depends, lie more peculiarly in the knowledge of the
party claiming such right.

The tenant is in possession of the premises, and, therefore, in a better
position than his landlord to know the condition of the building. Thomas
v. Kingsland, *ante*. Defects in a roof cannot, as a general thing, be easily
seen, and sometimes it is almost impossible to discover them even
when it is certain that they exist. If the landlord was bound to find and
repair them before they had made their presence known, it will place him
in the position of an insurer. But he does not insure; he merely agrees
to repair. He does not intend to guaranty that the tenant shall not sus-
tain any injury through a defect in the roof, but he does undertake to re-
store the roof to a state of repair, whenever it is known to be in disrepair.

In Leavitt v. Fletcher, 10 Allen, 119, there was a covenant to make all
necessary repairs to the outside of the building. The lessor reserved the
privilege to enter and view the premises, for the purpose of making im-
provements. The roof, by reason of the snow that lay upon it, fell and
injured the tenant's carriage. An action was brought to recover compen-
sation for the loss of the carriage. And it was held that the landlord was
not liable for the damages occasioned by the fall of the building. He did
not covenant that the outside shall not fall, but that if it does, he will
repair it.

Note on Covenant to Repair in a Lease.

Unless the landlord knows that the roof stands in need of repairs, so that notice to him is unnecessary, he ought not to be made liable for losses occurring through a failure to repair, where he has not failed to do what was necessary after he had been notified that repairs were required. Thomas *v.* Kingsland, *ante.* In case of a lessor's covenant to repair, the tenant should not be allowed to recover damages resulting from a want of repairs, of which he was aware, but of which he suffered the landlord to remain in ignorance. A man cannot recover damages for an injury that he could either avert or avoid. Id.

Where neither the landlord nor the tenant knew the premises to be out of repair, the loss must be borne by the person on whom it falls; if that person is the tenant, he cannot charge the loss to his landlord, unless the latter, in addition to his covenant to make the repairs, took upon himself the duty of ascertaining from time to time when they were necessary. Id.

In Thomas *v.* Kingsland, 108 N. Y. 616, the landlord covenanted, in his lease, to put and keep the roof of the demised premises in good repair. A new roof had been put on the premises the year before, and there was no proof that it had leaked or manifested defects up to the date of the tenancy. And it was held that the covenant did not imply that the roof was out of repair to the knowledge of the landlord at the time of the execution of the lease. The covenant must have a natural and reasonable interpretation. The defects complained of were such as could not easily be discovered and might not be suspected until made manifest by rain or snow, and the tenant in possession could discover and locate them while the landlord remained in ignorance. Under such circumstances, fairness requires that, unless the facts disclose a faulty roof known to the landlord, or at least which he ought to have known, defects occurring should be brought to his notice by the tenant.

*Apartments.*—A tenant from year to year renting part of a dwelling house, which is also occupied by other tenants, in the absence of an express agreement, is under no obligation to make repairs of a general, substantial and lasting nature. Bold *v.* O'Brien, 17 Weekly Dig. 466. The landlord, so far as the tenant is concerned, where the latter occupies but a small portion of the tenement, is bound to keep the parts of the tenement under his control in such a state of repair that the tenant may occupy his premises with safety. Id. And where the defect of the building is of a general character, and extends beyond the premises occupied by the tenant, unless he has been guilty of some contributory negligence, he, being one of a number of co-tenants, is entitled to recover the damages which he has sustained by the falling of the entire tenement building. Id.; Vanderpoel *v.* Smith, 2 Daly, 140.

Where, the owner of premises has leased them, not as an entirety to one individual, but in separate apartments to different tenants, and has reserved, among other portions of the premises, the common ways of passage to the yard, these ways still remain in his possession, and he is bound

to maintain them in a safe condition.   Dowd *v.* Fitzpatrick, 18 Weekly Dig. 343.

Such a case is not controlled by the general principle that the landlord is not bound to repair except by special contract.   The hallways, stairways, platforms, exits and entrances were not rented, but were used in common by all the tenants.   The latter have an easement over the same, but as they were not rented, the duty rested on the landlord to keep them in repair.   Id.   The tenants may invoke the principle of law, which binds the owner of real property to use care and diligence to keep the premises in safe condition for the access of persons who come thereon for any purpose beneficial to him.   Id.

In Doupe *v.* Genin, 45 N. Y. 119, an action was brought to recover damages for injuries to the plaintiff's goods and loss to his business from the omission of the defendant to repair the roof of the premises occupied by the plaintiff.   The defendant demised to the plaintiff, to be used in carrying on the upholstery business, the store and basement, except the right to the other tenants to use the basement stairs, of certain premises in the city of New York.   The lease contained no covenant on the part of the landlord to repair, but did contain a stipulation that, if the premises should be so damaged by accidental fire as to make them untenantable for more than thirty days, the rent should cease, at the option of the tenant, until the same should be repaired.   The upper part of the building was under lease to another tenant who was in occupation.   During the term, a fire broke out in an adjoining building, and spread to the building in question, and destroyed the greater part of the roof and the upper portion of the building, though the portion leased to the plaintiff was uninjured.   The defendant without delay commenced to restore the building, but during the work the plaintiff's goods were damaged, and he claimed that he had suffered in his business.   And it was held that, where a building has been injured by fire, the landlord cannot be compelled to rebuild or repair it for the benefit of his tenant unless he has expressly covenanted to do so; and that this rule applies as well to a tenant who has hired a portion of the building which is not directly injured by the fire, as to the lessee of the whole building or of the part destroyed.

In the absence of a contract, there is no principle upon which a party can be held bound to erect any structure for the purpose of protecting his neighbor from the inclemency of the weather, or to replace any structure upon his own premises which has been destroyed, because while it existed it afforded such protection.

*Statute of* 1860.—In Sheary *v.* Adams, 18 Hun, 181, the landlord and tenant entered into a written lease for the occupation of certain premises. Said lease contained the following provision:   "And the said party of the first part hereby agrees to keep the roof of the premises mentioned herein in good and suitable repair, so as not to affect the business of the said party of the second part."   The defendant became surety for the payment of the

rent. And it was held that chap. 345 of 1860, authorizing tenants to abandon premises if they become untenantable, does not affect the common law rule requiring tenants to make ordinary repairs, and that, if through the tenants, neglect to make such repairs the premises becomes untenantable, he cannot abandon them under the said act. If the landlord fail to perform his contract contained in the lease to keep the roof of the building in good repair, such failure, *per se*, would not constitute a defense to the tenant or his surety. If the premises, for such reason, became untenantable, the tenant could abandon the premises, and from that time would not be liable to pay rent.

A parol promise to repair, made by the landlord, after the execution of the lease, is without consideration and void. Davis *v.* Banks, 2 Sweeny, 184; Speckles *v.* Sax, *ante;* Gottsberger *v.* Radway, 2 Hilt. 342. See Flynn *v.* Hatton, 43 How. 333; 4 Daly, 552.

But where the landlord, by a subsequent agreement made upon sufficient consideration, contracts to keep the premises in repair, he is bound to do so and is liable in damages for a breach thereof. Post *v.* Vetter, 2 E. D. Smith, 248; Oettinger *v.* Levy, 4 Id. 288.

In Jeffers *v.* Bantly, 47 Hun, 90, an action was brought to recover rent. The defendants admit the rent, but claim that, subsequent to the execution of the lease under which rent became due, an oral contract was made between the parties, by which, in consideration of the payment by the lessees of five dollars a year more than the rent specified in said lease, the lessors agreed to make all necessary repairs on the demised premises, or to permit the lessees to make such repairs and to deduct the cost thereof from the rent reserved. Subsequent to such oral agreement, the lessees necessarily expended an amount, in making necessary repairs, in excess of the rent to recover which the action was brought. The written lease was for a term of three years. The lessees did not receive notice from the lessors of any intention on their part, prior to the time of the making of such repairs, to rescind such oral agreement. And it was held that they were entitled in this action to offset moneys, actually expended upon the faith of such oral agreement, against the rent reserved by the lease.

*Damages.*—Where the tenant suffers from the landlord's breach of his contract to repair, he has two remedies, either to do the necessary repairs himself and off-set the cost against the rent, or to show the difference in value between the premises as they were, and as they would have been if properly repaired. Such difference of value would have been damages which could have been set up by way of counterclaim.

It was held in Rosenbaum *v.* Gunter, 3 E. D. Smith, 203, that, where a landlord agrees to allow a tenant for repairs, an expenditure for that purpose, is, in effect, a payment on account of the rent.

In Dutton *v.* Holden, 4 Wend. 643, it was held that, the landlord, under a reservation of the right to enter and make repairs and alterations, cannot

justify the destruction of a fence, which leaves the premises exposed to the intrusion of cattle.

And where a lease reserves to the lessor the right to enter and make repairs, he is not liable for any damages resulting from its exercise, unless the work was performed in a wanton, unskillful or negligent manner. Turner *v.* McCarthy, 4 E. D. Smith, 247; White *v.* Mealio, *ante.*

In Myers *v.* Burns, 35 N. Y. 269, an action was brought for rent on a lease by the grantee of the reversion against the assignee of the term. The defense was a counterclaim, under a covenant of the landlord to keep the premises in repair, for $908, expended by the tenant in repairs, and for $700, damages occasioned by the loss of the use of four rooms, alleged to be untenantable for the want of repairs. The tenant made the repairs, in so doing, certain portions of the wood-work of the hotel were repainted with zinc paint, which was about fifteen per cent more expensive than common lead paint which was the original style of painting, and was more durable and more ornamental.

It was held that the landlord had the option of making these repairs by his own mechanics, and with such suitable materials as he should select. His omission to do so, gave the tenant the right to make them by his mechanics, and with such suitable materials as he should select. The latter was bound to be reasonable and judicious in his repairs; but he was not compelled to select precisely the same kind of paper or paint, or to be precise that the expense was not a farthing greater than had before been expended upon the same spot. He was at liberty to repair according to the modern style, and adopt modern improvements.

In this same case, it appeared that, during some portion of the term, four rooms in the hotel were of no use to the tenant. When fires, were kindled in them, the flues would not draw, but the gas and smoke issued out into the rooms, rendering them uninhabitable. The premises in question were leased as a first-class hotel, and the lessor had covenanted to keep the said hotel and premises in good necessary repair during the term, at his own proper charge and expense. And it was held that the rooms of a hotel were not in good repair for such a purpose, when they were so smoky that they could not be occupied; or when the coal gas issued at all times from the lighted grate and filled the room with its noxious substance. · No tenant or occupant could inhabit such rooms when a fire was needed. A house or a room which cannot be comfortably and safely inhabited, is not in good repair. A room in a first-class hotel, where women and children usually form portions of a family, cannot be tenantable or in good repair, unless a fire can be had when desired.

It is not important, either to the tenant or landlord, whether such defects in the flues are caused by delapidation or arise from original misconstruction. The rooms are equally untenantable and unhabitable in either case; and they are equally out of repair, from which cause the difficulty may arise. If the landlord agrees to keep in repair, and if, to keep in repair, it is necessary that the rooms should first be put in repair, he is bound to per-

form that duty. Where there is no covenant that the rooms be kept in their then condition of repair, or no exception of natural wear and decay, the fair intent of the agreement is that they shall be kept in good repair and good condition at all times.

Where the leased premises have been rendered untenantable by water from the roof, it would not be an answer to a request to repair that the leak existed when the lease was executed. Nor, if the ceilings had fallen, or the rooms were filthy from dirt and want of paint, will it be an answer that they were in that condition at the time of making the lease. The condition of the covenant to keep in repair, can only be performed by first putting in repair, when that is necessary. See Beech *v.* Crain, 2 N. Y. 86; Myers *v.* Burns, *ante.*

Where the landlord covenants to repair, and fails to do so, the tenant has two different remedies, of either of which he can avail himself, in case he has given due notice to the lessor to repair. He can make the repair himself and call upon the landlord to refund the expense; or he can call upon the landlord to take the ordinary responsibility of a party failing to perform his contract, to wit: to pay the damages caused by such failure. In the former case, the rule confines the damages to the actual expense, if no special damage is shown; but in the latter, the cost of the repair is not an element in the case. It is as though there was no such right to repair, on the part of the lessee, but the claim rested solely in damages.

In Cook *v.* Soule, 1 N. Y. S. C. 116, an action was commenced to recover money claimed to be due from the tenants for the rent of a certain building occupied as a livery stable. The tenants set up, by way of counterclaim, damages sustained by them by reason of the landlord's neglect and refusal to perform his covenant to keep the premises in good and sufficient repair during the term. The tenants made some partial repairs and gave evidence, against objection, as to the damages sustained by their property on the premises in consequence of the breaking down of the floor from the rottenness of the joists and also from leakage. And it was *held* that under such agreement to repair, the tenant may either repair and recover the expense, or recover damages sustained by him for failure to repair; that a lessee, by making partial repairs, does not bar a recovery for damages sustained before making such repairs, or for those sustained by defects not embraced in the repairs.

It was held, in this case, that the measure of damages, in case of a breach by the lessor, may be either the amount of damage done to the property of the lessee, or the difference between the value of the premises as they were and their value if in good repair.

On an appeal of this case to the court of appeals, in 56 N. Y. 420, the appellate court repudiated the former part, and sustained the latter portion of this rule.

In this case an action was brought by the lessor to recover a balance claimed to be due for rent of certain premises occupied by defendants as

tenants.  The defense was a counterclaim for damages, alleged to have been sustained from a breach of an agreement on the part of the lessor to put and keep the premises in good repair.  The premises were used for a livery stable.  The roof leaked during the term, by means of which the tenant's property kept in the building was from time to time more or less injured.  The tenants knew of the leaky condition of the roof.  And it was *held* that a tenant whose landlord has agreed to put the premises in repair but has failed to do so, knowing that his property will be exposed to injuries from storm, or otherwise endangered, if left upon the premises, has no right to take the hazard; and if he does and his property is injured, he cannot recover of the landlord therefor.  In this case, as the tenants knew of the leaky condition of the roof, they did not recover for any injury to their horses, carriages and other property left in the building, by getting wet, by reason of such defect.  It was the duty of the tenants to protect their property from such dangers.

Where the landlord covenants to repair, and fails to keep his agreement, the tenants are entitled, as damages therefor, to the difference between the value of the premises as they were and as they would have been, had they been kept in repair.  There may be exceptions to this rule.  Cook *v.* Soule, *ante.*  In cases where the requisite repairs are trifling, and the damages by not making them are large, it is the duty of the tenant to make them and charge the landlord with the cost.  See Miller *v.* Mariners' Church, 7 Green, 57; Laker *v.* Damon, 17 Pick. 284.  In such case, the tenant, after giving reasonable notice and opportunity to the landlord to make the repairs, if he neglect, may himself make them, and charge the landlord with the expense.

In O'Connor *v.* Goureaud, N. Y. Com. Pl., Dec. 6, 1886, an action was brought upon a written lease to recover a balance of rent, which was admitted to have been unpaid.  The lessor agreed to make all necessary repairs to the building.  He was requested to repair the premises, and sent a mechanic to make repairs upon each occasion when he was notified, and even insisted upon a guarantee from the roofer that the roof was good for two years.

Under the covenant in the lease in question, the authorities seem to agree that damages for its breach must be those which were contemplated or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract.  If the landlord fails to repair agreeably to his covenant, the tenant may make the repairs at the landlord's expense, and charge him with the diminished value of the premises in consequence of the want of it.  Id.; Myers *v.* Burns, *ante;* Cook *v.* Soule, *ante.*

But the tenant is not entitled to recover the amount of his loss from the landlord, without regard to what it would have cost to make the repairs. O'Connor *v.* Goureaud, *ante.*

If the repairs may be made at a trifling cost, the tenant cannot leave it

undone, and charge the landlord whatever damage may be done to his goods in consequence of not repairing, without limit to the amount. He cannot neglect reasonable efforts to protect himself and his landlord from injury and loss, nor can he reap any advantage from his own negligence, in a case where no claim is made on the part of the tenant, that the repairs were negligently made by the landlord, but only that the latter failed and neglected to perform his covenant.

In Walker *v.* Swayzee, 3 Abb. 138, the landlord undertook to make repairs, but did them in an insufficient and improper manner, and damages were allowed against him on the ground of negligence on his part.

The measure of damages in an action on a covenant to repair on the part of the landlord was held, in this case, to be the amount it would cost to make such repairs; and that the tenant cannot, by exposing himself, his family or his goods to the injuries or damage which result from the landlord's neglect, present a meritorious claim, when he can remedy the evil by repairs for which he will be fully indemnified out of the rental.

In O'Connor *v.* Gouraud, N. Y. Daily Reg., April 17, 1886, it was held that the amount of damage caused by rain to a tenant's goods by reason of a breach of the landlord's covenant to repair, was not recoverable, where it did not appear that the tenant had made any effort to make such repairs himself.

In Walker *v.* Gilbert, 2 Robt. 214, it was held that a subsequent promise by the lessor to repair was not broken, except by a neglect to perform it after the lapse of sufficient time for that purpose.

In Chadwick *v.* Woodward, 13 Abb. N. C. 441, it was held that a lessee, by entering and continuing in possession until the end of the term, waives any claim for damages arising from a lessor's failure to fulfill a condition of the lease that he shall, at its commencement, put the premises in repair ; that in any event he can only recover the amount actually expended by him in making the repairs required.

Where a lessor rents a stall, from month to month, for the purpose of keeping a horse, and, on being informed of a defect in the floor, promises to repair it, but neglects to do so, he is liable in damages for an injury resulting from such non-performance. Johnson *v.* Dickson, 1 Daly, 178. See Flynn *v.* Hatton, *ante.*

In White *v.* Mealio, 63 N. Y. 609, a promise to compensate the tenant for the injury sustained, during the progress of repairs, was held to be binding, notwithstanding the reservation of a right to enter for the purpose of making necessary repairs.

In Beach *v.* Craine, *ante,* the defendant had covenanted to erect and maintain a gate, between the public highway and plaintiff's land, across or over a private road granted him; and on default he was held liable for actual injury occasioned by cattle coming on to the land, in consequence of the removal of the gate.

In this case, the erection and maintenance of the gate were specially

contracted for, and its sole object was the protection of the land from such inroads of stray cattle from the highway; and the damages were properly held to result as a direct consequence of the breach.

In Flynn v. Hatton, 43 How. 333, the landlord by agreement was to make such repairs as were needed to keep the demised premises in tenantable condition.

Under breach of such a contract, the landlord is only liable, and so it was held in this case, to the tenant for such damages as naturally and according to the usual course of things arise from the breach, or which may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its breach, but not for accidental, remote or consequential causes. It was stated in this case that the natural and ordinary damages for the breach of a general agreement to keep the premises in repair, are the expenses of repair and the loss of the use of the premises, while the lessor was in default or during the making of the repairs; and that it could not be contemplated that any special risk or accident resulting from any particular defect, or likely to occur from decay or want of repair in any particular part of the premises, was considered; and, least of all, that it was likely the parties anticipated or had in thought or design, that the tenant, with full knowledge of the rotten or unsafe condition of any part of the premises, would expose himself, his wife, children or servants to any danger that might be threatened, of which he had full knowledge, and might avoid; or that it was the intention of the agreement that he or any member of his family should be insured or indemnified against all possible contingencies or casualties resulting from want of perfect repair in every portion of the premises.

The mere agreement to repair has reference only to the condition of the building or premises demised, for the purpose of their profitable use, and the pecuniary benefit to be derived from their enjoyment or lost from being deprived of their use in such state of repair as the agreement intended. Flynn v. Hatton, ante.

Such an agreement or contract in no way contemplates any destruction of life or casualties to the person or property of any one, which might accidentally result from an omission to fulfill the agreement in every respect.

But for the proposition that a landlord under contract to keep the premises in repair is for breach, also further liable to his tenant as in tort for willful refusal or neglect to perform his obligation, no warrant can be found in principle or authority. Nor does a subsequent parol promise, after being notified of defects, to make the necessary repairs, unless founded on a new consideration, superadd anything to his original obligation. See Doupe v. Genin, 37 How. 5; nor does it furnish any ground for awarding additional damages except so far as the tenant is by such promise delayed and hindered in making them at his own expense. Flynn v. Hatton, ante ; Turner v. McCarthy, ante.

In Ward v. Kelsey, 42 Barb. 582, the defendant leased to the plaintiffs certain premises consisting of warehouses, together with the improve-

ments thereon and the pier extending in front thereof, for a given term at a certain specified rent. He, in and by said lease, agreed that he would do all necessary repairs upon said premises and pier within a reasonable time after notice to him by the plaintiffs, requiring him to do so. While the plaintiffs were in possession of the premises, under the lease, the hoist-wheel was out of order, and they notified the defendant to put it in order, or they would do it. He refused to do it, and the plaintiff's thereupon caused the hoist-wheel to be repaired at their own expense. They after-wards brought this action to recover costs of such repairs and the damages they sustained during the time the repairs were being made. And it was held that the lessees were entitled to recover from the lessor all moneys expended by them in making necessary repairs, upon the lessor's neglecting to make the same, after due notice; but that they could not recover damages for the interruption to their business occurring while the repairs were being made, as such interruption would be no greater than if the repairs had been made by the lessor. The obligation assumed by the lessor, to make the repairs, gave him the right to interfere with the lessee's enjoyment of the property, so far as the making of such repairs rendered it necessary, and the lessees cannot complain of any injury resulting from the performance of that obligation. The case is not altered by the fact that the lessor failed to discharge his duty in this respect, and that the lessees themselves, in consequence thereof, made the repairs needed.

In Hexter *v.* Knox, 63 N. Y. 561, plaintiff leased of defendant a hotel in the city of New York and certain adjoining premises. The defendant covenanted in the lease to tear down the old building and erect a new building on the adjoining premises to be used in connection with the hotel. The new building was to be completed, and plaintiff put in possession thereof, by a specified time. Plaintiff was then occupying the hotel and the building upon the portion of the adjoining premises under a former lease. He removed the furniture from said building and stored it while the new building was being errected. Defendant failed to complete the new building within the specified time. The plaintiff, in an action to recover damages for breach of the covenant, was held to be entitled to recover the rental value of the use, for hotel purposes, of the rooms in the new building during the time he was deprived of such use by defendant's default ; and as to such of the rooms for which plaintiff had the furniture, he was entitled to the value of their use as furnished rooms.

Where a landlord covenants in his lease to make certain repairs, the tenant may, in case of a breach of the covenant, make the repairs and charge the expense to the landlord, but he is not bound to do so. If the landlord has due notice of their condition, he has no right to cast upon the tenant the responsibility and the burden of repairs which he was bound to make.

In Dorwin *v.* Potter, 5 Denio, 306, the plaintiff leased to the defendant

a farm together with a number of cows, young cattle and swine and certain farming utensils, and agreed that the barns on the premises should be put in good order. The roofs of some of the barns were leaky, and some of them had bad floors. An action was brought for non-payment of rent and other breaches of the provisions of the lease. The defendant gave notice of set-off, and recoupment of damages, on account of the plaintiff's failure to put the barns in good order according to his agreement. And it was held that the damages which the lessee was entitled to recoup in such action were the amount it would cost to put the barns in repair, and not the detriment which he suffered by their remaining out of repair during the term. He was not entitled to all the damages which he might have sustained by injuries to the cows and the young cattle, the increase of food required, and the decrease of produce by reason of the condition of the barns. Such damages are altogether too remote and contingent.

*Liability for condition.*—In Kabus v. Frost, 50 Super. Ct. 72, it was held that there is no implied warranty or obligation on the part of a landlord that the premises are in a safe condition for use, or that they will not become unsafe, and no general obligation to repair.

If a landlord lets premises and agrees to keep them in repair, and he fails to do so, in consequence of which any one lawfully upon the premises suffers injury, he is responsible for his own negligence to the party injured. Ahern v. Steele, 115 N. Y. 203.

When an owner demises premises and covenants to repair, the covenant cannot inure directly to the benefit of a third person not a party thereto. But in such case, the third person injured, because, for want of repairs, the demised premises have become a nuisance, has a cause of action against the tenant. And because the tenant, in case of a recovery against him, could sue his landlord for indemnity upon the covenant, the person injured, in order to prevent circuity of action, may bring his action against the landlord, not because the landlord owed him any duty to repair, but because he owed that duty to his tenant. If the owner of demised premises has let it without reserving any right to go upon it for repairs, and even if he could not have gone upon it for repairs without being a trespasser, it does not affect his liability for a nuisance existing thereon.

It was held in Clancy v. Byrne, 56 N. Y. 129, that a lessee, who has covenanted with his landlord to repair, is not responsible to a stranger for a nuisance upon the demised premises while in the possession of a sub-tenant to whom he had let them. In this case, the lessee had made no covenant to repair with his sub-tenant, and was not bound to indemnify him; and, therefore, the party injured could not maintain an action against him, though the latter had covenanted with his landlord to repair. In cases where it is said that a landlord is bound to make repairs upon demised premises is responsible for a nuisance thereon, the obligation to make the repairs was one existing between him and the tenant.

In Sterger *v.* Van Siclen, 55 Hun, 605, an action was brought for injuries sustained while upon defendant's premises. Defendant was the owner of a house which was occupied by a tenant. The plaintiff while visiting the tenant went upon the back stoop of the demised premises and was injured by the breaking of a portion thereof. The tenant had agreed to repair the stoop prior to the accident, and the defendant had allowed for such repair by a deduction from the rent. And it was held that, as between the tenant and those claiming under him, no action would lie against the landlord for injuries occasioned by such defect. The duty to repair, by virtue of the agreement, was assumed by the tenant.

A lessor of buildings, in the absence of fraud, or any agreement to that effect, is not liable to a tenant, or others lawfully upon the premises by his authority, for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they were apparently intended. Jaffe *v.* Harteau, 56 N. Y. 398; Cleves *v.* Willoughby, 7 Hill, 83; O'Brien *v.* Capwell, 59 Barb. 497.

The lessor of premises, demised in a ruinous state, may not shield himself from liability to strangers, for damages resulting from their defective condition, by taking from the lessees a covenant to keep the premises in good order and repair. Swords *v.* Edgar, 59 N. Y. 28.

A person, injuriously affected by the ruinous state of the premises demised, has no right nor privity in the lessee's covenant to repair. He is not given thereby a right of action against the lessee greater nor more sure than he had before. He has the right without the covenant. The covenant is a means by which the lessor may reimburse himself for any damages in which he is cast by reason of his liability. But it is an act and obligation between himself and another, which does not remove nor suspend that liability. A person, on whom there rests a duty to others, may not, by an agreement solely between himself and a third person, relieve himself from the fulfillment of his duty. Surely an ineffectual attempt to fulfill it will not relieve him. A covenant taken from a lessee, to keep in order and repair, is no more effectual than a contract with a builder to do all that is needful to make the premises secure for all comers. Both may afford an indemnity to the lessor, but neither can shield him from liability.

As between landlord and tenant, when there is no fraud or false representations or deceit, and in the absence of an express warranty or covenant to repair, there is no implied covenant that the demised premises are suitable or fit for occupation, or for the particular use which the tenant intends to make of them, or that they are in safe condition for use. The principle of *caveat emptor* applies to all contracts for the letting of property, real, personal or mixed, as much as to contracts of sale, with one or two recognized exceptions. O'Brien *v.* Capwell, *ante ;* McGlashan *v.* Tallmadge, 37 Id. 314; Cleves *v.* Willoughby, *ante ;* Howard *v.* Doolittle, *ante.*

In O'Brien *v.* Capwell, *ante*, there was no covenant on the part of the

Note on Covenant to Repair in a Lease.

landlord to repair. The tenant knew the condition of the premises and that they were out of repair at the commencement of the lease. And it was held, in an action to recover damages by the tenant's servant by reason of a want of repairs, that, as the lessor was under no obligation to repair the premises, and their condition was equally well known to the tenant as to him, there was no basis for an action of negligence, by the tenant, or any servant of his, or person standing in his place arising out of the fact that they were out of repair.